COOPER *v.* THE STATE.

1. The evidence warranted the verdict as to both venue and the commission of the offence.
2. According to many authorities, the newly discovered evidence, inasmuch as it applies to specific facts touching which there was no evidence at the trial, would be held not to be cumulative, although the new facts have no value except as tending to establish the same defence which was in question and touching which there was some evidence in behalf of the accused at the trial. Authorities to the contrary are numerous; but the conflict raises a serious doubt as to the true law. In view of this doubt, and because the newly discovered evidence would, if believed by the jury, be morally certain to produce a verdict of acquittal, a new trial is ordered so that the accused may have the benefit of this evidence. *Mathews* v. *The State*, 56 *Ga.* 469.

March 20, 1893. Argued at the last term.

Before Judge McWHORTER.  Hancock superior court. April term, 1892.

Cooper was indicted for the larceny of a speckled ox belonging to Amanda Dixon, on May 2, 1889, in Hancock county.  He was convicted, and moved for a new trial on the grounds that the verdict was contrary to law and evidence, and for newly discovered evidence. The motion was overruled, and he excepted.

Upon the trial it appeared from the evidence for the State, that the ox in question belonged to Amanda Dixon, and in the spring of 1889, was taken away, or wandered away, from the pasture lands of the estate of Dixon, lying in Hancock county near the county line of Washington county.  Lymus Dixon lived in the pasture where the ox was raised, about a mile from the county line.  If the ox was taken out of the pasture he was taken in Hancock county, but if he had got out he could easily have walked across the county line.  Sometimes the gates were left open, and the cattle could come from the pasture to the public road, and have gone across the line.  The ox was found at Alex. Rivers' in Washington county.  Lymus Dixon lives about two miles from the pasture where the cattle range, and defendant about six miles away in Washington county. Rivers got the ox from defendant in Washington county; just rented it from him, and never decided on how much rent he was to pay.  Defendant told him to keep it and fatten it up, and they would beef it in the fall, and that if anybody asked him where he got it, to ask them if they had lost one, and tell them he got it up the road. Lymus Dixon testified that he did not sell the ox to defendant, and did not take it to defendant in Washington county; never sold him a cow nor received any money from him; did not in the presence of Godfrey demand money from Cooper for this ox, nor receive money from defendant for it; did not tell defendant in the presence

of the two Godfreys that he did sell defendant the cow, and did not admit to one of the Godfreys that he had sold the ox and was going down there for the money. The Godfreys did not try to get witness to attend court and did not talk to him about it. Witness did not take the ox from the pasture or anywhere else.

For the defendant R. T. Godfrey testified, that in the fall of 1889 he heard Lymus Dixon admit that he sold the ox to defendant; that in April, 1891, witness was coming to court and saw Lymus and tried to get him to come, but he would not do it; and that the case was continued on account of Lymus's absence. W. P. Godfrey testified, that he was at defendant's one day when Lymus came and demanded pay for the ox. Lymus told him that he sold the ox to defendant, and witness heard Lymus admit to defendant that he sold him this ox; also heard Lymus deny that he sold it. Witness was interested with defendant in the beef business until September before this, and then in June afterwards went into business again. He always took down description of cattle and from whom he bought, and took down this ox as bought by defendant from Lymus. Another witness testified, corroborating the first witness as to the effort to get Lymus to come to court and his refusal to come. Amanda Duggan testified, that she was present when Lymus sold the ox to defendant at defendant's house in Washington county for $10, and that Lymus brought the ox there tied with a rope, and defendant let Rivers have it. In his statement defendant claimed that he bought the ox from Lymus and paid him for it; that he did not have the money when Lymus came, but Lymus came back again and he paid him.

The newly discovered evidence is shown in the following affidavits: Susan Dugan : Resides in Washington county near the road whereon defendant resides. In the spring of 1889, Lymus Dixon passed her house

driving a speckled ox. Next day she saw the ox at defendant's house, and defendant told her he bought it from Lymus. It was the same ox which was subsequently recovered from Alex. Rivers, and for stealing which defendant was convicted. Deponent never imparted this information to defendant or his counsel, because she was afraid she would be compelled to attend court a long distance from home, and she only mentioned the matter, after the case had been tried, incidentally to her friends, supposing that it had been finally disposed of. M. E. Johnson: In the spring of 1889, about or just before the time defendant was charged with the offence of stealing the ox, Lymus Dixon, a negro then residing on the Dixon estate, brought to deponent and offered to sell said ox. Deponent declined to buy it, and Lymus carried it away. The Dixon estate joins deponent's lands. Some days after the ox was missing and search was being made for it, Lymus returned to deponent, and urged her not to mention the fact that he had previously offered to sell her the ox. She concealed these facts from defendant and his counsel until after the verdict, because she did not want to be summoned as a witness, etc. L. S. Garner: Resides in Washington county a few miles from Cooper. About the time Cooper was charged with stealing the ox, Lymus Dixon, who then resided on the Dixon estate, brought the ox to deponent and offered to sell it to him, and he declined to buy it, and Dixon carried it off. A few days afterwards deponent heard that defendant had bought it from Lymus. Deponent knows it was the same ox which Cooper was convicted of stealing. He never imparted this information to defendant or his counsel until after the trial, because he had an extensive practice as a physician and did not care to be summoned as a witness, etc. Also, affidavit of defendant and his counsel as to their ignorance of

the facts stated in the above affidavits until after the trial, and as to the use of diligence by counsel. The counsel also made affidavits as to the good character of Mrs. Johnson.

T. M. Hunt and J. T. Jordan, by Harrison & Peeples, for plaintiff in error.

W. M. Howard, solicitor-general, by J. H. Lumpkin, *contra.*

Bleckley, Chief Justice.

1. Though the evidence as to the fact of larceny by the accused, and also as to whether the scene of it was in Hancock county, was circumstantial, we think it was fully sufficient to warrant an affirmative finding on both questions, if the jury failed to credit the testimony in behalf of the accused, as they must have done in order to reach a verdict of guilty. Nothing but the newly discovered evidence is suggestive of any legal merit whatever in the motion for a new trial.

2. In consequence of the wide range of investigation and the thorough course of study into which the writer was led by the exigencies of this one case, he feels prepared to produce a treatise on cumulative evidence, and yet he is quite unprepared for the minor and more moderate task of writing a judicial opinion on the subject. The exact truth is that, though he well knows what cumulative evidence is, he does not know what evidence is cumulative. He can define, but cannot distinguish. Of course, this statement is meant to be taken literally in rare instances only. Perhaps, in the great mass of instances, there is no real difficulty in discriminating evidence which is merely cumulative from that which is not so. According to many authorities, the newly discovered evidence in the present case was not cumulative, because it relates to specific facts touching which there was no evidence at the trial. Many other

authorities would treat it as cumulative, because the new facts have no value except as tending to prove and establish the same identical defence which the accused set up at the trial, and touching which he not only adduced some evidence, but enough to clear him if the jury had given it credit. There is doubt, consequent upon this conflict, and we are not sure how the doubt ought to be solved. Of one thing, however, we are morally certain, which is, that the new evidence would and ought to produce a verdict of acquittal if it is submitted to a jury and the jury believe it. We are impressed with the belief, from the record as a whole, that this man is probably innocent, and that he ought to have the benefit of this new evidence. Using our power of direction, as was done in *Mathews* v. *The State*, 56 *Ga.* 469, we direct that the case be tried over.

*Judgment reversed.*