### 5695. NOLAN, *alias* JONES, *v.* THE STATE.

WADE, J. 1. It does not appear that the alleged newly discovered evidence could have been obtained by the defendant at the trial by the exercise of reasonable diligence. At least some of it is not merely cumulative or impeaching; if credited by the jury, it would be likely to produce a different verdict on another trial; and the ends of justice require that a new trial be granted. *Dale* v. *State,* 88 *Ga.* 560, 561 (15 S. E. 287); *Cooper* v. *State,* 91 *Ga.* 362, 366 (18 S. E. 303). See also *Mitchell* v. *State,* 6 *Ga. App.* 558 (4) (65 S. E. 326); *Dougherty* v. *State,* 7 *Ga. App.* 94 (66 S. E. 276); *Holton* v. *State,* 9 *Ga. App.* 421 (71 S. E. 599).

2. The proof offered at the trial was not sufficient to connect the defendant directly with the cartridges offered in evidence, and the court erred in allowing the cartridges to go before the jury.

3. There are several other exceptions (most of which are without any substantial merit), but since the questions raised by these exceptions are not likely to occur on the next trial, it is unnecessary to discuss them.

*Judgment reversed. Roan, J., absent.*

DECIDED JULY 21, 1914.

Indictment for robbery; from Cobb superior court—Judge Patterson. April 11, 1914.

From the evidence it appeared that on January 16, 1914, shortly after 7 o'clock in the evening and after a southbound passenger-train of the Nashville, Chattanooga & St. Louis Railway had left Vining's station, where it was due at 7:10 or 7:12 o'clock, a man wearing a mask and carrying a pistol, who had not previously been seen on the train, entered a car and forced several passengers to deliver pocketbooks and money to him; and that he left the train from its rear platform when it was approaching Bolton, a station about three and a half or four miles from Vining's station, and about half a mile south of the Chattahoochee river. A police officer testified that 15 or 20 or perhaps 30 minutes after this train had passed Bolton, the defendant was arrested there, and, in reply to

questions, said that his name was John Jones, and said that he came from Atlanta on a train to see a carpenter named Smith, who lived "up the road a piece," in a direction to which he pointed; he said he had been living in Atlanta about six months, but he refused to give the name of the street where he lived, or to tell who his people were; he had on a little gray street cap, a gray overcoat, and a "brown striped coat—corded stripe," the same coat worn by him at the trial; his person was searched and he had between three and five dollars, but no pistol was found; he submitted to arrest without protest and without being told why he was arrested. The witness testified that he knew the people at Bolton, and that he did not know a carpenter there named Smith. Others residing at Bolton testified that they did not know such a person.

F. W. Hadley and Bailey Varner were the only witnesses who testified that they were on the train at the time of the robbery. Hadley testified, that the robber had on a light coat and dark trousers, a light-colored overcoat, and a light-colored cap, and a mask which looked like a dirty piece of cheese cloth, and which "covered all his face except his eyes, his forehead, his chin, and below his chin;" it had very large holes for the eyes, and exposed not only his eyes but also "a good portion" of his face; his nose was not exposed, and the witness did not notice his ears or the color of his hair, and did not think of looking at his hands, but looked very closely to see through his mask, whether he was white or black, and looked very carefully at his eyes, which were of a dark color, but not black; his cap was far enough down over his face to hold the rag he used as a mask; the car was well lighted; the witness saw his general shape; he was prominently stoop-shouldered. He took from the witness a pocketbook containing $17. This witness further testified: "The next I saw of him was in the Fulton county jail. . . I talked to this defendant in jail. . . His voice was what I expected to hear. It was a voice that compared exactly with the voice of the man who robbed me, if he would raise his voice and give the command he gave on the car. When I first faced him he turned his eyes away and would not look at me. . . He looked away from me, and I said, 'My brother, you are the boy that took my money away from me in the train.'" Varner testified that when he was on the back platform of the train he saw the face of the robber, unmasked, and that the defendant was the man he saw; that he saw him also in the jail.

Witnesses introduced by the defendant testified that they saw him making a purchase at a store in Bolton on the evening of the robbery, and saw him leave the store when it closed at 6:20 o'clock. One of them said that he had on "a checked cap and possibly an overcoat." It was testified that he could have caught a car of the Marietta car line, leaving Bolton at 6:25 o'clock and arriving about 6:35 o'clock at the stopping place for Vining's; it does not go to Vining's. Another person testified that about 7:20 o'clock that evening, while on the river car line from Atlanta, going towards the river, he saw the defendant about 20 feet from the car, walking, between Fisher's avenue and Hamilton's station. The defendant, in his statement at the trial, said that he was at the post-office store in Bolton about 6:30 o'clock, and then walked up and down there, and was arrested about 7:20 or 7:30 o'clock, and that he knew nothing of the robbery until later. "That night, I believe, two of the other passengers looked me over, and one of them said, 'No, that is not the man; he is not heavy enough for him, and hasn't on the right kind of clothes.' I said, 'What kind of overcoat did the man have on?' and he said, 'No overcoat at all;' and I had an overcoat when I was arrested."

1. The alleged newly discovered witnesses were W. E. Bennett and A. J. Rogers. In Bennett's affidavit it is stated that on the evening of January 16, 1914, he was a passenger on the "N., C. & St. L. train" bound for Atlanta, which was robbed between Smyrna and the Chattahoochee river, and that the robber took from him a purse containing $80; that the robber was an erect man with broad shoulders, who had a mask over his face, covering all the features except his eyes, and had on a gray suit of clothes and no overcoat; that he was not John Nolan; that on the evening following the robbery, the deponent, with a passenger named Sheets, interviewed Nolan in jail, and had him talk, and became satisfied that he was not the man who robbed the train; deponent examined Nolan's clothes carefully, and knows that the brown suit of clothes that Nolan had in his cell at the jail was not the suit of clothes worn by the robber; Nolan has a droll voice, while the man who robbed the train had a sharp, nervous voice, with a catch in it. Deponent is a resident of New York City. In the affidavit of Rogers it is stated that when Bailey Varner was going to the commitment trial of John Nolan. he heard Varner say that "he would not know the

man when he saw him, that he would be unable to recognize him;" that he "did not see well enough at the time the train was robbed to know that he was the same man that committed the robbery;" that the man that robbed the train had on a mask; that he did not see him with it off. These affidavits were accompanied by uncontradicted affidavits of several persons as to the good character of Bennett and Rogers, and their reputation for truthfulness, and by affidavits of the defendant and of his counsel as to their diligence in trying to procure evidence. In the defendant's affidavit it is stated that on January 17, 1914, two men whose names or addresses he did not then know, examined him at the jail and told him they were passengers on the train that was robbed the day before, and that he was not the man who robbed them; it was only through his counsel, since the trial, that he learned that one of them was W. E. Bennett and the other a Mr. Sheets; he has not yet been able to locate Mr. Sheets; he did not at the time of his trial know of the evidence contained in the affidavit of Rogers. In the affidavit of his counsel it is stated that until after the trial they did not know of the evidence of Bennett or Rogers; that Bennett has promised to attend the next trial, and that Rogers is a resident of the county and can be had as a witness. It is stated that the defendant has been continuously in jail since his arrest. A note of the judge states that the defendant did not apply for a continuance.

2. At the trial Bettie Price testified that certain cartridges were just like cartridges which she found in the defendant's room in a hotel on Trinity avenue in Atlanta and turned over to the proprietor of the hotel. Another witness testified that he went to "the house on Trinity avenue and got some things that looked like this," indicating cartridges. In the motion for a new trial this testimony is set out, and it is stated that "here the solicitor-general tendered in evidence . . some shells," and that counsel for the defendant objected to their introduction. F. W. Hadley then testified that he got one of the bullets that went in the train when the man that robbed it discharged a pistol, and that it looked to him to be "the same bullet as one of these;" that the bullet struck a hard object and was distorted, but, as near as he could determine, it was "probably a 38 bullet from a gun that was probably a 45-caliber gun." The court then admitted in evidence the shells offered, over the objection that they were not proved to be the iden-

tical shells delivered to the proprietor of the hotel by Bettie Price, or to have been in the defendant's possession, and were irrelevant.

*D. K. Johnston, Mozley & Moss,* for plaintiff in error.

*Herbert Clay, solicitor-general,* contra.