## Coates v. Commonwealth.

(Decided October 21, 1930.)

684

V. R. LOGAN for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Ernest Coates appeals from a judgment convicting him of the crime of shooting at another with intent to kill, but without wounding, and fixing his punishment at two years' confinement in the penitentiary.

The evidence, briefly stated, is as follows: Joe Rich, the prosecuting witness, was married to appellant's mother, and when they were living together resided at her home. Appellant was married and had one child. When he and his wife separated he kept the child. Afterwards he took the child to his mother's home and she agreed to keep it. On returning to his mother's home after an absence at work, she told him that she could keep the child no longer. Suspecting that his mother's change of mind was due to Rich, appellant went to the garden of his mother's place where she and Rich were at work. According to Rich, appellant ordered him across the river. Rich replied that he was aiming to go, but wanted to get the garden hose. Appellant said, "Either go now or you'll stay." Appellant ran back to the house and got a shotgun. On his return appellant pulled the hammer back and the gun went off accidentally. Rich then left. When he had gotten 200 or 300 yards away, appellant ran up and "kind of headed him off," and called to him. Appellant then aimed the gun at him and fired the second shot. The fourth shot took effect in his leg. Mrs. Rich corroborated her husband as to what occurred at the time. She says that after appellant shot, her husband left and appellant followed him. When they had

gotten about 100 yards away she heard the reports of the gun, but did not know who fired the gun. Oliver LeMay testified that some time prior to the day of the shooting appellant came to his home and said that some day he would be passing there and was going to show Rich the road to Brownsville, and if he did not go that way he was going to fill Rich full of shot. On the day of the shooting appellant came to his home and said: "I shot Uncle Joe. Don't say anything much about it. I shot him and I don't know how bad I hurt him, but I'm satisfied I hit him." On the other hand, appellant, after detailing the conversation he had had with his mother respecting the child, says that he went over to the garden and told Rich to go. Rich did not go, and he went to the house and got the gun. When he fired the first shot the gun went off accidentally. When the second shot was fired Rich was about 100 yards away. He did not aim to hit Rich, "but aimed to give him a little scare." He did not know whether he hit Rich or not. The barrel of the gun was about two and one-half feet long, and the gun was loaded with No. 4 shot. In his opinion the gun would not have carried that distance. On cross-examination he stated that he did not shoot up in the air, but threw the gun up "and shot kind of towards him," but was not shooting to kill him, and never took any aim at him to shoot him.

After detailing the evidence, the brief for the commonwealth deals with the question of sufficiency of the evidence to take the case to the jury and sustain the verdict in the following language:

"Appellant admits that he was armed with the above described gun and that he was chasing the prosecuting witness and firing. The prosecuting witness states that appellant was firing in his direction, and that four of the shot struck him. Appellant denies this and says he was firing the gun merely to frighten him. As the evidence on this point is conflicting it was a question for the jury."

It is at once apparent that this is a clear and concise statement of the case, and there can be no doubt of the soundness of the conclusion that appellant's guilt was a question for the jury.

The sufficiency of the indictment to sustain a conviction for a felony presents a more serious question. The

language of the indictment is, "did unlawfully, willfully, and feloniously, shoot at without wounding," etc. It is suggested that the word "feloniously" is broad enough to include the word "maliciously." It is true that such was the conclusion of the court respecting an indictment charging arson. Young v. Commonwealth, 12 Bush, 243; Aikman v. Commonwealth, 18 S. W. 937, 13 Ky. Law Rep. 894. But we are unable to apply the same rule to an indictment under section 1166, Kentucky Statutes. The language of the statute is:

"If any person shall wilfully and maliciously shoot at another without wounding . . . or shoot at and wound another with the intention to kill him, . . . [he] shall be confined in the penitentiary not less than one or more than five years."

There are several degrees of this offense, such as shooting in sudden affray and assault and battery. Section 1242, Kentucky Statutes; Breeden v. Commonwealth, 151 Ky. 217, 151 S. W. 407; Commonwealth v. Heath, 99 Ky. 182, 35 S. W. 277, 18 Ky. Law Rep. 57. Therefore, malice is the element that distinguishes the two lower offenses from the higher offense denounced by section 1166. That being true, we have uniformly held that malice is one of the essential elements of the crime denounced by that section, and not only is a failure to submit the question of malice to the jury prejudicial error, Hall v. Commonwealth, 219 Ky. 446, 293 S. W. 961, but an indictment not containing the word "maliciously" will not support a conviction under that section, Herrold v. Commonwealth, 6 S. W. 121, 9 Ky. Law Rep. 677. But it is suggested that the insufficiency of the indictment was waived by failure to demur. Since the indictment alleged a public offense, though of less degree than that denounced by the statute, a demurrer would have been unavailing. In the circumstances the case is merely one where the accused was convicted of a greater crime than that charged in the indictment, thus presenting a situation that the law does not permit.

This conclusion makes it unnecessary to consider the other questions raised, as it is wholly improbable that the errors relied on will occur on another trial.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.