## Pack v. Commonwealth.

May 7, 1940.

J. F. Bailey, Judge.

836

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

Appellant was indicted in the Martin circuit court under section 1166, Kentucky Statutes (1936 edition), accusing him of maliciously shooting and wounding Frank Webb with intent to kill.

On his trial he was convicted and his punishment fixed at three years' confinement in the penitentiary.

To reverse that judgment this appeal is prosecuted, complaining (1) that the trial court erred in its instructions given the jury and (2) in the admission of evidence.

The facts and circumstances leading up to and conducing to bring about this shooting difficulty here involved are as follows:

The appellant and the prosecuting witness, Frank Webb, at the time this shooting occurred, lived near each other up on Buffalo Horn Creek in Martin county, Kentucky, a considerable distance from Inez, the county seat. They, together with other of their neighbors, were employed upon a W. P. A. project under construction at Inez, to and from which they were daily transported in a truck.

Further it is shown that on the evening of September 18, 1939, shortly before appellant's admitted shooting of Webb took place, they, with other workers, were returning in the truck to their homes, when a heated quarrel and controversy arose between appellant and the prosecuting witness, Frank Webb, over the latter's appropriation and misuse of a bundle of paper cement sacks, belonging to appellant and which he was taking home for use in papering his house.

After an exchange of oaths and abusive epithets between the parties over these sacks and appellant's recovery of them from Webb, the row abated and the truck proceeded on its way, making several stops along the route, one of which was at Henry Kirk's, where Webb got off and stayed. Appellant also there left the truck, but only long enough to procure a pistol from Kirk.

From this point, the truck went on to the end of its trip at the mouth of the creek, where appellant got off to cross the creek and walk up the road to his home. As the waters of the creek were running high and appellant was lame, a friend carried him across. He was there joined by his little daughter and as they were walking up the road to their nearby home, they were overtaken by the witness John Marcum and Webb, who were also going up the road to the latter's home, located on the same road a short distance beyond that of appellant.

Appellant's version of the shooting which then followed their meeting (in which he is corroborated by his daughter) is that Webb and Marcum came up the road in a trot after him and that before they overtook him, Webb hallooed, "Whoopee! I am the meanest man that ever went up Buffalo Horn;" that he, notwithstanding such challenge, kept going on as fast as he could, as he did not want to get into any trouble, but that Webb, upon catching up with him, rushed up to him; that as Webb came towards him, he (appellant) asked him, "What have I done to you that you want to treat me that way?" (referring to Webb's previous quarrel with him over his sacks); that Webb answered, "God damn you;" to which he then said, "Yes, and God damn you! Anyone that would treat me the way you have;" that Webb then ran across the road and grabbed him with his left hand and hit him in the side of the head with a rock that he had in his right hand; that the lick he hit him in the head with the rock blinded him—that Webb struck him an awfully hard lick as he held him around the neck with his left arm and "his head back like that (indicating);" that he (appellant) had a revolver in his pocket. He further testifies that when weighing the situation, he said to himself, "I am not able to fight a fellow like that—he is a young buck and stout and me

forty six years old and so I grabbed my gun and fired it and he turned me loose and I said, 'Let's go, daughter;'" that the rock Webb hit him with was about four inches square.

On the other hand, the testimony of the prosecuting witness, Webb, is that neither he nor John Marcum hallooed or said a word as they walked up the road towards his home; that he did not have a rock in hand and that he did not rush onto or take hold of appellant upon overtaking him; that as they overtook Fred, "he looked back at me and said, 'What was it your business getting them sacks?' and I said, 'It wasn't nothing to me * * *.' I said, 'You didn't get mad over that.' Well, he said, 'You God damned s. o. b., I am going to settle with you.' And I thought he had a pistol in his pocket, he run his hand down in his pocket, and he said, 'I mean to settle up with you.' I grabbed at his arm and he wheeled and stepped back down the road and grabbed the pistol and shoved it in my ribs and shot me, and John Marcum jumped in between us and said, 'Fred, go on up the road, you have killed Frank;' and he said, 'I mean to kill the God damned s. o. b.; that is what I got this gun for.'"

Webb's account of the shooting is also in all details corroborated by John Marcum, who states that he took no part in Webb's and Pack's difficulty; that when he and Webb overtook Fred Pack, he turned around and said to Frank, after accusing him with being mixed up in the difficulty about the cement sacks, "Now, God damn you, I am going to settle up with you;" that "when he said that, Frank made a pass at him and grabbed him, looked to me like, by the shirt bosom, I think with his left hand and about the time Frank began to lay his hand on his shirt bosom, the gun fired." When asked, "Did you do anything to prevent him (Pack) from shooting Frank again?" he answered, "Nothing. Only I walked up and took hold of Fred and took hold of Frank and I said, 'Fred, it looks like you have done killed him, get on up the road,' and he said, 'That is what I meant to do. I meant to kill the God damned s. o. b.'" Marcum also states that no one else was present except the three of them and appellant's little daughter, who was standing 35 or 40 feet away and who, when the shooting occurred, screamed and started running up the road.

At the conclusion of the introduction of this conflicting evidence, the court gave the following instructions as covering the whole law of the case thereby presented:

"Instruction No. 1. If the jury should believe from the evidence to the exclusion of a reasonable doubt that the defendant, in this county, and before the finding of the indictment herein, did willfully and not in self-defense, with a pistol, a deadly weapon, shoot at and wound Frank Webb, with the felonious intent to kill the said Webb, and from which shooting death did not ensue, you will find the defendant guilty and fix his punishment at confinement in the State Penitentiary not less than two nor more than twenty-one years.

"Instruction No. 2. If, however, the jury believe from all the evidence in this case, to the exclusion of a reasonable doubt, that in this county, and within twelve months before the finding of the indictment, the defendant, in sudden affray or in sudden heat of passion, without malice, did shoot at and wound Frank Webb with a pistol, a deadly weapon, then they will find him guilty and fix his punishment at a fine not less than $50.00 and not more than $500.00 or at confinement in the county jail not less than six months and not more than twelve months, or both so fine and imprison him.

"Instruction No. 3. Although you may believe from the evidence that the defendant shot and wounded said Webb, yet if you further believe from the evidence that at the time and in the act of shooting said Webb the defendant believed, and had reasonable grounds to believe, that Webb was then and there about to inflict death or some great bodily harm on defendant, then defendant had a right to use such means as reasonably appeared to him to be necessary to prevent such danger, real or to the defendant apparent, in which latter event, you will find the defendant not guilty under the law of self-defense.

"Instruction No. 4. If you have a reasonable doubt of the defendant being proven guilty, you will find the defendant not guilty, but if the reasonable

doubt, if any, is as to the degree of the offense committed, you will find him guilty of the lower degree.''

The main ground relied on for reversal of the judgment convicting appellant of the felony offense created and defined by section 1166, Kentucky Statutes, is that the court, by its instruction No. 1, failed to define the offense in the terms of the statute creating and defining it.

The language of section 1166, Kentucky Statutes, so far as here pertinent, is that:

"If any person shall willfully and *maliciously* shoot at another without wounding * * * or shoot at and wound another with intention to kill him so that he does not die thereby, * * * he * * * shall be confined in the penitentiary not less than two or more than twenty-one years." (Italics ours.)

As said in Coates v. Commonwealth, 235 Ky. 683, 32 S. W. (2d) 34, 35:

"There are several degrees of this offense, such as shooting in sudden affray and assault and battery. Section 1242, Kentucky Statutes; Breeden v. Commonwealth, 151 Ky. 217, 151 S. W. 407; Commonwealth v. Heath, 99 Ky. 182, 35 S. W. 277, 18 Ky. Law Rep. 57. Therefore, malice is the element that distinguishes the two lower offenses from the higher offense denounced by section 1166. That being true, we have uniformly held that malice is one of the essential elements of the crime denounced by that section, and not only is a failure to submit the question of malice to the jury prejudicial error, Hall v. Commonwealth, 219 Ky. 446, 293 S. W. 961, but an indictment not containing the word 'maliciously' will not support a conviction under that section, Herrold v. Commonwealth, 6 S. W. 121, 9 Ky. Law Rep. 677."

However, the indictment under which appellant was tried and convicted did accuse him, in approximately the language of the statute, of the crime of "malicious shooting at and wounding another with the intent to kill," and, in its descriptive part, charged that he committed the crime of which accused by "unlawfully, willfully, maliciously and feloniously" shooting at and

wounding Frank Webb, "with the felonious and malicious intent to kill him."

Section 1242, Kentucky Statutes, defines the offense (included as a lower degree of section 1166) of shooting a person "in a sudden affray, or in sudden heat and passion, without previous malice, and not in self-defense," with or without wounding him, as a misdemeanor, punishable by a fine or confinement in jail, or by both, as therein provided.

In other words, the felony offense created and defined by section 1166, Kentucky' Statutes, must be a shooting and wounding maliciously done, whereas that of shooting in sudden affray, etc., is a lesser degree of this offense, or a misdemeanor, which is defined by section 1242 as being a shooting and wounding without malice.

Thus it is to be seen that the distinguishing element between the felony offense and the misdemeanor offense is malice.

It is to be observed that the criticised instruction, No. 1, failed to define the offense of which appellant was accused or to instruct the jury that it must find the defendant had *maliciously* and willfully shot Frank Webb, before it could find him guilty of the offense so defined and denounced by section 1166 and emphasizing malice, as stated above, as being its essential element.

We are therefore led to conclude that instruction No. 1 was prejudicially erroneous, in that the court, in therein describing the offense, failed to follow the language of the statute, defining and creating the felony and thereby making malice its distinguishing element.

It was here material that the court, by its instruction, should have made clear, by proper definition and description, the higher and lower degrees of the offense of shooting and wounding another. It should have instructed the jury that in order to convict appellant of the felony offense of which he was accused, it should find from the evidence that he had willfully and *maliciously* shot and wounded Webb.

Judge Robertson, in discussing this distinction between the statutory offense of maliciously shooting and wounding and the lesser offenses included in it, of shoot-

ing and wounding without malice and assault and battery, in Commonwealth v. Yancy, 63 Ky. 375, 2 Duv. 375, said:

"Section 2d [section 1166] * * * makes it felony to shoot at and wound another willfully and maliciously, with intent to kill.

"But section 1 [section 1242] * * * makes it only a misdemeanor to do the same act without malice, and not in self-defense.

"To be felony, the act must have been murder, if death had ensued; and to make the wounding a misdemeanor, killing must have been only manslaughter.

"To charge a wounding simply, with intent to kill, characterizes the offense as a misdemeanor—to make it a felonious wounding, malice must be charged. (Rapp v. Commonwealth, 14 B. Mon. [614], 621; Rennaker v. The Commonwealth, unreported.)"

See also to like effect Greenwell v. Commonwealth, 125 Ky. 192, 100 S. W. 852, 30 Ky. Law Rep. 1282, and Housman v. Commonwealth, 128 Ky. 818, 110 S. W. 236, 33 Ky. Law Rep. 311, where it is declared that the offense of malicious shooting (section 1166, Kentucky Statutes) is not committed unless the perpetrator would have been guilty of murder had death resulted; that malice is an indispensable ingredient in any offense under section 1166, as is also the existence of the intent to kill; but that it is not necessary to allege or prove that the act was felonious, as the terms of the statute do not require that the act should have been done feloniously, and an instruction so requiring is erroneous.

The instruction given did not meet this requirement, in that it failed to follow the language of the statute creating and defining the felony offense of maliciously shooting and wounding with intent to kill.

Also, the testimony of the parties and their witnesses being in direct conflict as to the circumstances under which the defendant shot and wounded Webb; as to whether it constituted a malicious shooting and wounding of him or was done in a sudden affray without malice, it was for the jury to determine the facts

upon such issues and such question presented by the evidence was properly cared for by the court's instruction covering sudden affray. See Commonwealth v. Bullock, 67 S. W. 992, 24 Ky. Law Rep. 78, for instructions given on malicious shooting and the lesser offense of shooting in sudden affray, there approved as appropriate, also Hobson's Instructions to Juries, section 693, page 824.

However, as to this, the court on retrial should also define the term "sudden affray" as used in the instruction.

Such being our conclusion reached, that the court's instruction was erroneous, as hereinabove indicated, and that for such error the judgment will have to be reversed, it becomes unnecessary to here dispose of or intimate an opinion in regard to the other questions presented and same are expressly reserved.

Judgment reversed and cause remanded.