## 28829. CAWTHON v. THE STATE.

Decided June 17, 1941. Rehearing denied July 23, 1941.

*Reuben A. Garland,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, Daniel Duke,* contra.

MacIntyre, J. Henry Cawthon was indicted on seventeen counts charging seventeen different misdemeanors. The judge directed a verdict in favor of the defendant on eight of the counts. The jury acquitted the defendant on eight counts and found him guilty under count 12 charging assault and battery upon P. S. Toney. The defendant's motion for new trial was overruled and he excepted.

1. The evidence disclosed that the flogging was committed in the same manner that floggings were committed in *Walton* v. *State,* 65 *Ga. App.* 124 (15 S. E. 455) ; *Bryant* v. *State,* 65 *Ga. App.* post (15 S. E. 2d, ...) ; *Eidson* v. *State,* 65 *Ga. App.* 119 (15 S. E. 2d, 462) ; *Forster* v. *State,* 65 *Ga. App.* 123 (15 S. E. 2d, 454). It appears from the evidence that the East Point Ku Klux Klan received some complaint about a man named Toney for creating a lot of disturbance about organizing a union in the Scottdale Mill community. The defendant was the chairman or "head of the wrecking crew" of the East Point Klan on the date of the crime charged in count 12, and this crew seemed to function, in part at least, as a "flogging" committee. Bishop testified that on the night in question a group of members of the East Point Klan left East Point and went to Lithonia to put on some degree in Ku Klux Klan work, and the defendant was in that group. The group were in two cars and the defendant was driving one, his own, a yellow Oldsmobile. The witness was in the other car. Bryant, Walton, and a man named Forster were in the car with the defendant, and on the way back from Lithonia, when they reached Avondale Estates, some one in the crowd said: "We are going down here and get a man." The car witness was in stopped, "down about Scottdale Mills somewhere," and the defendant's car went on down the road and in about fifteen minutes the defendant's car came back

"and passed by the car in which I was sitting, and he blew his horn three times, and we turned around and followed them a piece. The blowing of that horn three times was for a signal to come on. That was the horn of Mr. Cawthon's car that was blowing, the one that went out to the mill. It was a yellow Oldsmobile. When that yellow Oldsmobile returned I couldn't see well enough to tell whether there was anybody in that car that hadn't been in it when they left us and went down to the mill. Mr. Toney, this man at the Scottdale Mills, was carried out beyond East Point in a little piece of woods, they call it the Connally Estate, as far as I know. I think there is a subdivision being developed there. That is in Fulton County, Georgia. They taken Mr. Toney out [of the defendant's car] and taken a strap and gave him a lashing. I do not know who did the lashing. I don't think one of these straps was used. It was something similar to the strap here on top, similar to this one. I think there were four people actually engaged in that flogging, as well as I can recollect. Those four who did the flogging were Raymond Bryant and Dan Eidson and Walton and one other that I can't call now. There was just one whipped him at a time, four different ones. If Cawthon got out of the car I didn't see him. I am talking about that Oldsmobile. If he got out when they taken that man out I didn't see him." Luke Trimble testified for the State: "I live in the City of East Point. I am the secretary of the local Klan at East Point, from the middle part of 1937, to the present time. I recall an incident that occurred along in August, 1938, with reference to a person named P. S. Toney living at Scottdale, Georgia. As I remember, a bunch of us from East Point went out to the Lithonia Klan to a meeting, and after the meeting was over, *we* proceeded to Scottdale, and there *we* picked up Mr. Toney and carried him to East Point and flogged him at a place that they called the city dumping grounds. . . As well as I remember, there was a fellow named Slim Bryant and Walter Forster and W. T. Walton and W. C. Bishop and *Henry Cawthon* [the defendant] and Dan Eidson and Floyd Lee and myself in the group that went out there." (Italics ours.) This evidence was sufficient to authorize the conviction.

2. The defendant contends in special grounds 1, 12, and 13 that he was tried on so many counts at the same time that he was not given a fair and impartial trial, and that his constitutional

rights have been violated. There was no demurrer to the indictment. In *Lynes* v. *State,* 46 *Ga.* 208, the Supreme Court held that in cases of misdemeanors, the joinder of several offenses in the indictment will not, in general, vitiate the proceedings at any stage of the prosecution (See *Webb* v. *State,* 177 *Ga.* 414, 170 S. E. 252), and in the absence of statutory provisions there is no limitation on the number of counts which may be joined in one indictment. 31 C. J. 776, § 338. See also *Bulfin* v. *State,* 38 *Ga. App.* 358 (144 S. E. 15); *York* v. *State,* 42 *Ga. App.* 453 (3) (156 S. E. 733). These grounds are not meritorious.

3. Special ground 2: "When improper argument to the jury is made by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel should make objection to such argument or invoke some ruling or instruction with reference thereto by the court; but it is not essential that a motion for mistrial should be made." *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711); *Smoky Mountain Stages Inc.* v. *Wright,* 62 *Ga. App.* 121 (8 S. E. 2d, 453); *May* v. *Lee,* 57 *Ga. App.* 893 (197 S. E. 50). This rule applies even though the argument or remarks complained of be in the solicitor's opening remarks. *Clark* v. *State,* 5 *Ga. App.* 93, 94 (1). It does not appear from this ground that any objection was made or any ruling invoked at the time of the alleged improper argument by counsel for the State, and under the ruling quoted above the ground presents no question for consideration on review.

4. Grounds 3 through 11 complain of the admission of certain testimony by various witnesses as to other floggings. The defendant was shown to be at the head of the "wrecking crew" in 1939, therefore these grounds are controlled adversely to the defendant by *Walton* v. *State,* supra.

5. In ground 14 the defendant complains that the judge erroneously charged the law of admissions. Conceding but not deciding that this excerpt from the charge was an erroneous statement of the law of admissions, and that there was no evidence of admissions, it could not have been harmful to the defendant because the judge specifically restricted this charge with reference to admissions to count 11 of the indictment, and the jury returned a verdict of not guilty on that count, therefore any error with reference thereto would not be harmful. *Pyle* v. *State,* 4 *Ga. App.* 811 (5)

(62 S. E. 540) ; *Fields* v. *State,* 46 *Ga. App.* 287 (5) (167 S. E. 337) ; *Griggs* v. *State,* 38 *Ga. App.* 258 (2) (143 S. E. 608).

6. Grounds 15 through 18 contend that a new trial should be granted because of certain alleged newly discovered evidence. This, in effect, was that the defendant was not present at the meeting of the Klan at Lithonia which preceded the time of the flogging of Toney (for which the defendant was convicted) by several hours. The theory of this evidence evidently was that the defendant did not participate in the flogging because he was not present at the meeting of the Klan at Lithonia on the same night. It appears from the evidence that the meeting of the Klan referred to in the alleged newly discovered evidence occurred before the flogging. Assuming that the defendant was not at the meeting of the Klan on the occasion in question, yet we do not think this evidence could effect a different result if a new trial were granted, for it would not prove that the defendant was not present at the flogging or had not in some way participated in it. His absence from the Klan meeting at Lithonia would still be consistent with his presence at the flogging. Furthermore, the affidavit of Frank Harbin, which is relied on in support of these grounds, discloses that on the night in question he saw the defendant, and that the defendant told him that he (defendant) had a job to get out and could not go to the meeting of the Klan, and the accused will not be heard to say that he has recently discovered his old conversation with his proposed new witness. *Dobbs* v. *State,* 44 *Ga. App.* 749, 751 (162 S. E. 845). "A motion for new trial based upon newly discovered evidence is generally addressed to the sound legal discretion of the court, and the court alone is the trior of the weight and credibility of the testimony. The evidence as to the homicide [flogging] in this case was direct, not circumstantial; some of the newly discovered evidence would not have been admissible if another trial were granted; and other portions are merely cumulative of the defendant's statement at the trial, and contradictory of testimony in behalf of the prosecution adduced upon the trial." *Howell* v. *State,* 178 *Ga.* 111 (172 S. E. 27). As was said by Judge Bleckley in *Young* v. *State,* 56 *Ga.* 403, 405: "It was early ruled by this court that newly discovered evidence was not a favored ground for new trial." *Jackson* v. *State,* 56 *Ga. App.* 250, 255 (192 S. E. 454). "In order to grant a new trial upon newly discovered evi-

dence, it must appear 'that the newly discovered evidence is not cumulative only nor solely to impeach the credit of a witness, and that the probable effect thereof, if another trial be had, will be to produce a different verdict.' *Burge* v. *State,* 133 *Ga.* 431 (2) (66 S. E. 243)." *Phillips* v. *State,* 59 *Ga. App.* 466 (1 S. E. 2d, 225). The cases cited by the defendant, *Saylors* v. *State,* 9 *Ga. App.* 227 (70 S. E. 975), *Cooper* v. *State,* 91 *Ga.* 362 (18 S. E. 303), *Paden* v. *State,* 17 *Ga. App.* 112 (86 S. E. 287), *Mathews* v. *State,* 56 *Ga.* 469, *Harper* v. *State,* 50 *Ga. App.* 298 (177 S. E. 886), and *Fellows* v. *State,* 114 *Ga.* 233 (39 S. E. 885), are cases which the court seemed to treat "as special and peculiar" (*Mathews* v. *State,* supra), and do not furnish a proper test in a case like the one at bar, but the facts here bring this case under the general rule as stated in *Howell* v. *State,* supra, and the court did not err in overruling the motion for new trial on these grounds.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

### ON MOTION FOR REHEARING.

MacINTYRE, J. The defendant argues that the evidence of the Allen and Kent floggings was not admissible for there was no evidence to show that the defendant was in any way connected with such floggings, and that no one identified the defendant as one of the participants therein. It might be noted from the record that the evidence of the Allen flogging was admitted conditionally under the following ruling of the court: "Under that statement of the solicitor I admit the testimony, but I will rule it out unless you do connect it up." No subsequent objection was made. No motion was made to rule it out, therefore the admission of this evidence is no cause for a new trial. *Sloan* v. *State,* 35 *Ga. App.* 347 (133 S. E. 269). With reference to Kent's flogging, it might be noted that the defendant was identified as the head of the "wrecking crew" of 1939. One Bishop was a member of the "wrecking crew" and was identified by Kent as one of the persons who participated in flogging him. This was a circumstance along with the other circumstances which might be considered by the jury in connecting the defendant with that flogging and in determining the guilt of the accused of the crime for which he was found guilty, all of which was a part of a general plan and scheme of the "wrecking crew." We do not think the defendant was deprived of his constitutional right of a public and speedy trial by an impartial

jury as urged by the defendant. The other grounds of the motion for rehearing being considered, the

Rehearing is denied. *Broyles, C. J., and Gardner, J., concur.*