**Elvis HALL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 11, 1955.

Woodward, Bartlett & Catinna, Hartford, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Justice.

Elvis Hall, 41 years of age, was convicted of maliciously cutting and wounding Frederick McQuady, with intent to kill. He was sentenced to prison for two years. On his appeal Hall contends that the lower court erred (1) in giving an instruction on malicious cutting and wounding; (2) in not giving an instruction on assault and battery; (3) in failing to define the terms "deadly weapon" and "sudden affray" as they were used in the instructions; and (4) in permitting a knife to be exhibited in evidence during the trial.

The principal witness for the Commonwealth, Frederick McQuady, 20 years old, testified that on August 15, 1953, he, accompanied by Ernest Embry and Wendell Morris, was driving out of Hartford toward Beaver Dam. He turned his left signal light on and started to turn left off the highway for the purpose of turning around, when a car driven by Hall started to pass him. McQuady said he turned back into his right lane; drove on a short distance farther and turned left off the road near a bulk gasoline plant; and Hall drove in

behind him. According to McQuady, Hall got out of his car, walked up to where he was and said, "If you can't drive the damn thing, park it." He then got out of his car and a fight ensued between him and Hall. The evidence is conflicting as to who struck the first blow. McQuady testified that Hall hit him with his fist; he struck Hall with his fist; Hall immediately pulled a knife from his pocket and cut him over the right eye; and he ran a few steps, picked up a coca-cola bottle and threw it at Hall. The Commonwealth's evidence is to the effect that the bottle missed Hall and broke on an oil drum, while Hall's evidence showed that the bottle struck him on the head and then broke. McQuady ran across the street; picked up a piece of pipe about three feet long; ran back to the scene of the fight; and struck Hall a blow which rendered him unconscious. McQuady said Hall was coming toward him with his knife when he struck him with the pipe. The boys who were in the car with McQuady corroborated this testimony. Both of them said they saw a knife on the ground near Hall after the fight was over. They said it was a small pocket knife; one of them saying the blade was about one and one-half or two inches long.

Hall's version of the incident is at variance with that of McQuady. He testified that he and his wife and another couple were returning from Owensboro; as they drove into Hartford, McQuady's car was parked in the middle of the street and McQuady was engaged in a conversation with someone; Hall blew his horn and then McQuady started driving very slowly and stopped at a traffic light; the light changed and McQuady did not pull out immediately, so Hall blew his horn and started around him but was prevented from doing so by oncoming traffic; McQuady started moving very slowly again; he attempted to pass him a second time but McQuady pulled over in front of him; McQuady gave no signal of his intention to turn left at any time; he started to pass McQuady again and when the front of his car was about even with the rear door, McQuady swerved his car to the left again, leaving the road; and in order to avoid a collision he turned sharply

to the left, and drove off the road to the rear of McQuady. Hall said he stopped a few feet behind McQuady; got out of his car and said, "Son, what are you trying to do? Don't you know how to make a left-hand turn?"; McQuady answered by saying, "I'll show you"; McQuady got out of his car and came toward him and they began fighting; McQuady struck him before he hit McQuady; no one was hurt during this first struggle; McQuady broke away, picked up a coca-cola bottle and hit him with it; and McQuady ran across the street into a yard. He said he thought the difficulty was over so he started to get back into his car, but before he was able to do so McQuady ran up and hit him with a pipe. Hall denied using a knife and stated he did not have a knife with him at the time. He also testified that the knife exhibited in evidence was not his. Hall's wife and the other passengers in his car corroborated his testimony. Archie Renfrow, who was in a restaurant near the scene of the fight, testified that the fight was over before he reached the immediate scene. However, he saw a small knife on the ground about 15 feet from where the fight took place. He picked it up but a deputy sheriff took it from him.

■ It is argued by Hall that the crime charged against him could not have been a felony because the evidence for the Commonwealth shows at most that it was committed in a sudden affray without previous malice. His theory is that the alleged offense amounted to nothing more than a misdemeanor. We are unable to agree with this theory. We are of the opinion that there was evidence tending to show that Hall was the aggressor in the affray. The Commonwealth's evidence indicates that he was angered by reason of what he deemed McQuady's poor and aggravating driving, and that he followed McQuady off the road at the gasoline plant. According to McQuady and the two boys with him, Hall struck the first blow and later cut him with a knife. The jury could have believed from this evidence that Hall was in a belligerent attitude and was actuated by malice. The instruction on malicious cutting and wounding was proper.

■ Hall argues also that the court should have given an instruction on assault and battery. With this contention we agree. Common law assault and battery is a lesser degree of the offense of malicious cutting and wounding charged in KRS 435.-170(2), which is the section under which Hall was indicted. Where the evidence authorizes it in such cases, an instruction on assault and battery should be given. Reed v. Commonwealth, Ky., 248 S.W.2d 911; Helton v. Commonwealth, Ky., 244 S.W.2d 762. In this case Hall and the persons with him testified that he did not use a knife in the fight. The jury was entitled to accept their testimony and this question should have been submitted to the jury. Although this constituted reversible error, we will discuss the other alleged errors in order that the questions may not arise upon a second trial of the case, if there be one.

■ The argument is made that the court should have defined the terms "deadly weapon" and "sudden affray" as they were used in the instructions. The rule adopted by this Court is that where the weapon is of such character as to make it deadly per se, there is nothing to submit to the jury, but where the deadly character of the weapon depends upon the manner and circumstances in which it was used, a question of fact arises for the jury to determine as to whether it was a deadly weapon. Philpot v. Commonwealth, Ky., 247 S.W.2d 499; Thompson v. Commonwealth, 306 Ky. 470, 208 S.W.2d 512. In Williams v. Commonwealth, 304 Ky. 359, 200 S.W.2d 926, we held that an ordinary pocket knife with a blade two or three inches long was a deadly weapon per se, and that the court did not err in failing to define "deadly weapon." The knife allegedly used by Hall was described as a small pocket knife with a blade about one and one-half or two inches long. It is a matter of common knowledge that a knife of this size could produce death, even though a thrust or stab with it ordinarily might not reach a vital portion of the body. Therefore, a definition of "deadly weapon" was not necessary.

■ An "affray" has been defined by this Court as "a mutual combat voluntarily engaged in between two or more persons." Newsome v. Commonwealth, 287 Ky. 447, 153 S.W.2d 949; Gillis' v. Commonwealth, 202 Ky. 821, 261 S.W. 591. The words "sudden affray" are not synonymous with the words "in sudden heat and passion." Stanley's Instructions to Juries, Section 811(8). It follows that the use of the words "in sudden heat and passion" in the sudden affray instruction was not a sufficient definition of the term "sudden affray."

■ In this case the testimony is in direct conflict as to how the altercation began. The jury could have believed from the evidence that McQuady attacked Hall with his fist, and that Hall cut him during the scuffle that followed. In view of the conflicting testimony concerning the incident and the circumstances peculiar to this case we believe that the court should define the term "sudden affray" if there be another trial of the cause. See Pack v. Commonwealth, 282 Ky. 835, 140 S.W.2d 626.

■ During the course of the trial the Commonwealth's Attorney, over objection of Hall, produced and exhibited a knife to the jury. It is contended that this was prejudicial error because the knife was not properly identified. There is no evidence showing how the Commonwealth acquired possession of the knife or who had possession of it from the date of the fight to the date of the trial, or actually, whose knife it was. A number of persons testified that they saw a knife on the ground at the scene of the fight, but no one positively identified that knife as the one exhibited in evidence. The witnesses who testified that they saw Hall use a knife were unable to say with certainty that the knife in question was used by him. The deputy sheriff, who took possession of the knife found at the scene of the fight, was not called as a witness. Clearly the knife was introduced in evidence without proper identification.

Judgment reversed, for proceedings consistent with this opinion.