**Robert Francis DEAN, Appellant,**

v.

**Carl HOCKER, Warden, Appellee.**

**No. 22674.**

United States Court of Appeals
Ninth Circuit.

March 27, 1969.

Leslie M. Fry (argued), and Mack Fry, Reno, Nev., for appellant.

C. B. Tapscott (argued), Deputy Atty. Gen., Harvey Dickerson, Atty. Gen., Carson City, Nev., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and SMITH,* District Judge.

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

RUSSELL E. SMITH, District Judge:

This is an appeal from an order of the district court denying a petition for a writ of habeas corpus.

Petitioner was convicted of robbery after trial by jury. His defense was the presumption of innocence. There was strong evidence of guilt which the jury believed, as did the state trial judge and the justices of the Supreme Court of Nevada, who heard the matter twice.[1] The United States District Judge, from whose order this appeal is taken, not only believed the evidence but felt that it was so convincing that "the jury could have acquitted only by rejecting substantially all of the prosecution's testimony." From what appears in the record here there is little doubt the defendant was guilty, and that it would have been a mistake in judgment had the jury failed to convict.

We reverse.

The state of Nevada did not accord to the defendant the last full measure of his Fourteenth Amendment rights.

A gun and a jacket were, over proper objection, introduced into evidence. They had been illegally seized, and by virtue of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) were inadmissible in the state prosecution. The state of Nevada now urges that the error was harmless. That argument must be examined in light of the federal law announced in Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967).

In *Fahy* the test was posed in this language: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." In *Chapman* the court, explaining *Fahy*, said:

"There is little, if any, difference between our statement in Fahy v. Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

This rule of reasonable doubt to the second power operates as one of a group of rules governing the judicial process. The function of that process is to appraise the evidence which is available to the prosecution both in fact and in law and to determine whether there is a requisite quantity of it to warrant a verdict of guilty. Under this process it is not the fact of the defendant's innocence which entitles him to be acquitted; but the fact that the evidence of his guilt does not measure up to the prescribed standards. Subordinate to this principal right are other rights which grow out of the laws governing the process. Thus, in Nevada a defendant has:

The right to a trial by a jury.[2]

The right to have the jury chosen in a more or less random fashion.[3] The right to random selection vests in the defendant a right to have on his jury such dull minds as the gods of chance may provide for him.

The right to be found guilty only by the unanimous verdict of the twelve persons on the jury.[4] This right embraces the right to have the independent judgment of each individual juror.

The right to the presumption of innocence which continues until guilt has been shown beyond a reasonable

1. Dean v. Fogliani, 81 Nev. 541, 407 P.2d 580 (1965); Dean v. Hocker, Nev., 436 P.2d 427 (1968).

2. Nev.Const. Art. 1, § 3.

3. N.R.S. 6.090.

4. N.R.S. 175.481.

doubt.[5] A defendant is entitled not to be convicted if the mind of the dullest of the jurors formulates a doubt which to it seems reasonable. The right is to the thought process of that dullest mind and the courts may not substitute any other thought process.

■ To summarize a constitutional error in the admission of evidence is harmless under *Fahy* and *Chapman* only if it can be said that there is no reasonable possibility that illegally admitted evidence did not overcome in the mind of the dullest juror a doubt which that mind might have conceived to be reasonable.

The robber used a gun and wore a jacket. The prosecutor argued to the jury that the bartender victim had testified that the gun used by the robber looked like the gun admitted in evidence; that the gun was found in the accomplice's house; that a bullet found in defendant's pocket fitted the gun. The United States District Judge concluded that in view of the positive identification of the defendant by the bartender victim and his wife, and the admissions made by the defendant, that the gun and jacket (which are not relevant except on the identity issue) had but a negligible tendency to corroborate the witnesses. The Supreme Court of Nevada concluded that the gun did not contribute to the identification of the defendant. In any view of the matter the proof that the gun used was the gun admitted in evidence was very weak, and any sophisticated mind appraising the evidence might well conclude, as did the judges who did appraise it, that the gun and jacket, because they were not sufficiently connected to the crime, had almost no evidentiary value.

We deal here with real evidence. In 1877 Mr. C. J. Darling (later Justice Darling) posed this thought:

"What is called 'real evidence'—mostly bullets, bad florins, and old boots—is of much value for securing attention. This is true even when these exhibits prove nothing,—as is generally the case. They look so solid and important that they give stability to the rest of the story. The mind in doubt ever turns to tangible objects. They who first carved for themselves a Jupiter from a log of wood knew very well that the idol could do nothing for them; but it enabled them easily to realize a power who could. A rusty knife is now to an English juryman just what a 'scarabaeus' was to an Egyptian of old. I have seen a crooked nail and a broken charity-box treated with all the reverence due to relics of the holiest martyrs." [6]

Perhaps Mr. Darling overstated the matter, but there still lurks in the cupboard of judicial thought the idea that physical objects do have an impact on jurors and that the judge, as a preliminary matter, should avoid that impact where the real evidence has little or no relevance.

Normally we do not find appellate courts affirming judgments because the physical evidence did not prove anything. The contrary is true. In many cases reversals were predicated in whole or in part on the admission of evidence not sufficiently identified.[7] These reversals illustrate the general belief that physical evidence admitted does influence a jury, notwithstanding the lack of a satisfactory foundation. Mr. Wigmore says of this proposition:[8]

" * * * First, there is a natural tendency to infer from the mere pro-

---

5. N.R.S. 175.191, 175.211.

6. Wigmore on Evidence, § 1157, at 253 (3d ed.1942).

7. State v. Filacchione, 136 Mont. 238, 347 P.2d 1000 (1960); Nolan v. State, 14 Ga.App. 824, 82 S.E. 377 (1914); Hall v. Commonwealth, 276 S.W.2d 441 (Ky.

1955); State v. Fasick, 149 Wash. 92, 270 P. 123, aff'd en banc 274 P. 712 (1929); Kerr v. State, 31 Ala.App. 203, 14 So.2d 256 (1943); People v. Orloff, 65 Cal.App.2d 614, 151 P.2d 288 (1944).

8. Wigmore on Evidence, § 1157 at 254 (3d ed.1942).

duction of any material object, and without further evidence, the truth of all that is predicated of it. Secondly, the sight of deadly weapons or of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence.

The objection in its first phase may be at least partly overcome by requiring the object to be properly authenticated, before or after production; and this requirement is constantly enforced by the Courts."

The gun and jacket did not go to the jury carrying only their own evidentiary value. The orders admitting them and overruling the objections made on the ground of lack of foundation and immateriality told the jurors that the judge believed that the gun and jacket had something to do with the case. In this case the argument of the prosecutor, apart from its intrinsic value, carried to the jury the impression that a legally trained public servant had a belief in the evidentiary value of the exhibits.

■ It may be that the gun and jacket had no substantial impact upon any juror, but in light of what has been said here we are not sure beyond a reasonable doubt. Perhaps without the exhibits one of the jurors would have doubted, and the defendant was entitled to the benefit of that doubt, although to us and the other judges who have studied the case the doubt would have been unreasonable.

The order of the district court is reversed and the case is remanded for proceedings not inconsistent herewith.

BARNES, Circuit Judge, (concurring):

I concur. I conclude that the repeated reference and reliance by the prosecution on the physical evidence in argument to the jury makes it difficult to now rule that there was, beyond a reasonable doubt, harmless error in the introduction of the gun and jacket.