SEWELL CARLTON THURLOW, JR., Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 4784

October 27, 1965                    406 P.2d 918

*Mendoza, Foley & Garner,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, Carson City; *William P. Beko,* District Attorney, Tonopah, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Thurlow was convicted of murder, after a jury trial in the district court at Tonopah, Nevada. At the trial evidence seized in a search of his automobile was admitted over objection that the search and seizure violated the Fourth Amendment. He has appealed, again asserting the unreasonableness of the search and seizure. We

rule that the conviction must be set aside and the case remanded for another trial.

The essential facts are not disputed. The dead body of Thayer Wilshire was found on November 6, 1963, near Tonopah. Two days later a criminal complaint was filed, charging Thurlow and Nancy Aymor with murder. Albuquerque, New Mexico, police, acting on an all-points bulletin sent by telegraph, arrested the defendants. A police officer observed Nancy Aymor sitting in Thurlow's parked car. The officer went to the car, arrested her, and learned that Thurlow was in a trailer house about fifty feet away. Thurlow surrendered after being ordered to come out. These arrests occurred about 2:00 p.m. on November 8. Before leaving the scene of the arrests, the officer locked the car. A search for evidences of a crime was not made at that time. Thurlow and Aymor were taken to the police station and booked for murder.

About two hours later, police officers returned to the scene of the arrests where they discovered that the car had been broken into and Thurlow's mother and others were removing articles therefrom. Those articles were returned to the car and the car was removed to an impound area about 3 miles from the scene of the arrests. The next day, November 9, at about 1:15 p.m., officers from Tonopah, accompanied by policemen from Albuquerque, searched the car and seized the following items which were later admitted into evidence at the trial: a crowbar found in the trunk of the car which, upon scientific analysis, was shown to have a minute spot of human blood upon its surface; a piece of cardboard found between the radiator and the grill bearing the handwritten words, "Frontier Tavern, Austin, Nevada"; a section of the front seat cover with Type "O" human blood on it; a sample of human blood taken from the inside of the right window of the car; and from the outside surface of the car samples of human blood and hair.

1. A search warrant was not secured. The search and seizure occurred about 24 hours after Thurlow's arrest at a different place and may not, therefore, be

deemed incident to the arrest. A search can be incident to arrest "only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." Stoner v. California, 376 U.S. 483 (1964) ; Agnello v. United States, 269 U.S. 20 (1925).

The jury below found Thurlow guilty on February 18, 1964. On March 23, 1964, Stoner v. California, supra, and Preston v. United States, 376 U.S. 364 (1964), were handed down by the United States Supreme Court. The Preston case squares factually with the instant matter. There, as here, the suspects were arrested and their car, which was not searched at the time of the arrest, was removed and stored at a garage. After the suspects had been booked at the station, the officers made two separate searches of the car and seized items which were later used as trial evidence. The High Court wrote: "It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 (1914) ; Agnello v. United States, 269 U.S. 20, 30 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S., at 158, and to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30 ; Marron v. United States, 275 U.S. 192, 199 (1927) ; United States v. Rabinowitz, 339 U.S. 56, 61–62 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody,

then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., at 31. Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See Stoner v. California, * * *. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. Cf. United States v. Jeffers, 342 U.S. 48, 51–52 (1951). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 267 U.S., at 153. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." Preston v. United States, supra, at 367–8.

Here the state suggests that we should not place great reliance upon Preston, for to do so would accord that opinion retrospective significance. This suggestion is unsound. Preston merely applied well established search and seizure law to the facts of that case. Agnello v. United States, supra. Our ruling here does not rest upon Preston, but rather is corroborated by it. Indeed this court in Whitley v. State, 79 Nev. 406, 386 P.2d 93 (1963), made it clear that a search and seizure without a warrant and unrelated to the arrest, both as to time and place, is unlawful.

2. Next the state argues that the record shows consent by Thurlow to the search of his car. The evidence relied upon is the testimony of an Albuquerque police officer. It was: "Q. I believe it was your testimony that you advised the defendant that you were going to take him down and book him and return and search the car, is that correct? A. That's true. Q. Do you recall what the defendant stated to you? A. He said this would be all right." Thurlow testified, flatly denying that he had consented to the search.

The burden of proving consent rests with the state. Clear and persuasive evidence is required, particularly when the suspect is under arrest. Judd v. United States, 190 F.2d 649 (D.C. Cir. 1951) ; United States v. Rutheiser, 203 F.Supp. 891 (S.D. N.Y. 1962) ; United States v. Gregory, 204 F.Supp. 884 (S.D. N.Y. 1962). In such circumstances a court must distinguish between the peaceful submission by the arrested suspect to the authority of a law enforcement officer, from an intelligent and intentional waiver of a constitutional right. Dade v. State, 112 P.2d 1102 (Okl. 1951) ; United States v. Reckis, 119 F.Supp. 687 (D.C. Mass. 1954). Here Thurlow's "all right" response to the police officer's statement, given shortly after his arrest, may not be considered as a consent to the search of his car at that time or later. United States v. Marra, 40 F.2d 271 (W.D. N.Y. 1930) ; United States v. Kowal, 197 F.Supp. 401 (D.C. R.I. 1961) ; Dawson v. State, 175 P.2d 368 (Okl. 1946).

3. Finally, the state suggests that the conviction may be sustained by resort to the harmless error rule.[1] We agree with the view of California that illegally

[1]NRS 169.110 reads, "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

obtained evidence may sometimes be a "relatively insignificant part of the total evidence and have no effect on the outcome of a trial." People v. Parham, 384 P.2d 1001 (Cal. 1963). An automatic reversal is not mandated by an unreasonable search and seizure. In each case our task is to review the record and determine whether there is a "reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85 (1963); Stoner v. California, supra. Applying that standard here, we find prejudicial error.

The success or failure of the state's case below rested wholly on circumstantial evidence. Thurlow was charged with killing Wilshire by striking and beating him upon the head with a metal instrument. No person purporting to be an eye-witness to the homicide testified. A doctor advised the jury that the medical cause of death was "severe injury to the brain, severe hemorrhaging, severe fractures of the skull" due to the blows of a "quite heavy and possibly sharp object." The crowbar which was illegally received in evidence was, by plain inference, the instrument used to accomplish death. The prosecutor, in jury summation, conjectured that such was the fact. The other items of illegally admitted evidence tended to connect Thurlow with the crime charged. It is clear to us that there is a reasonable possibility that the evidence thus erroneously admitted might have contributed to the conviction. Fahy v. Connecticut, supra.

Reversed and remanded for a new trial.

Counsel for appellant was court appointed. Accordingly, we direct the District Court to give him the certificate specified in NRS 7.260(3) to enable him to receive compensation as provided in NRS 7.260(4).

BADT, J., and ZENOFF, D. J., concur.