ROBERT FRANCIS DEAN, Petitioner, *v.* JACK FOGLIANI, Warden, Nevada State Prison, Respondent.

No. 4855

November 9, 1965                    407 P.2d 580

*Milton Manoukian,* of Zephyr Cove, Nevada, for Petitioner.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, *Herbert F. Ahlswede,* Deputy District Attorney, and *Gene Barbagelata,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, D. J.:

This case presents the problem of who has the right to object to the admission of evidence when there has been an unlawful search and seizure.

On April 13, 1963, a robbery was committed at Brickie's Tavern, in Reno, Nevada. In the early morning hours of April 14, 1963, both petitioner and Roy Peter Hansen were arrested at Hansen's home in Reno. Police officers acted upon a tip from one Jerry Scott, who gave them a key to the rear door of the Hansen house. Scott is identified only as an "occupant" of the Hansen house. The officers entered the house via the back door, without knocking, using the key.

The police found the petitioner lying on the floor asleep. Hansen and his wife were asleep in another room. The officers arrested petitioner and Hansen and took both to the city jail for booking. The house was searched at this time but nothing was found. A short time later the officers returned with a defective search warrant and searched the house and garage. This time they seized a gun and jacket which were admitted at the trial as Exhibits A and B. It is the seizure and admission of these two pieces of evidence which petitioner questions.

Petitioner and Hansen were initially co-defendants, but a motion for severance was secured by the petitioner. Hansen was then tried separately. At Hansen's trial, the seized evidence was excluded on the ground that it was illegally obtained and contrary to the requirements of the Fourth Amendment of the United States Constitution and Article 1, Section 18, of the Nevada Constitution.[1]

Later at his trial, petitioner moved to exclude the jacket and gun from evidence contending that the search

[1]United States Constitution, Amendment 4. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Nevada State Constitution, Article 1, Section 18. Unreasonable seizure and search; issuance of warrants. The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.

and seizure, having been unlawful as to Hansen, were likewise inadmissible as to himself because he was a lawful occupant of Hansen's home at the time of the search and seizure despite the fact petitioner was not physically present when the search actually took place. At Dean's trial, the prosecutor and defense counsel stipulated that the search warrant was defective and thus the search and seizure illegal.

The trial court denied petitioner's motion to suppress and the evidence was admitted. Petitioner was found guilty, a new trial denied, and he was sentenced to not less than five years and not more than fifteen years in the Nevada State Prison.

In his petition Dean asks this court to release him from the Nevada State Prison and to expunge his conviction for robbery.

1. The proposition that one must have standing to invoke the Fourth Amendment proscription against an unreasonable search and seizure still persists in the opinions of our nation's Highest Court. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Realizing the dual purposes of the Constitutional mandate—to protect one's personal right of privacy and to curtail unlawful activity by law enforcement officials—that court has eroded the standing requirement considerably.

The question of who has "standing" to invoke the constitutional protection of the Fourth Amendment of the United States Constitution and Article 1, Section 18, of the Nevada Constitution, was to a considerable extent resolved in Jones v. United States, supra. That case provides that in order for a person to have the right to claim an unlawful invasion of privacy, he

(1) must be one of the persons against whom the search was directed; or

(2) must be one who is charged with illegal possession of the property to be suppressed; or

(3) must be anyone who was legitimately on the

premises where a search occurs and the fruits of the search are proposed to be used against him.

"We are persuaded * * * that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. Distinctions such as those between "lessee," "licensee," "invitee," and "guest," often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards." Jones, supra, at 266.

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by a motion to suppress when its fruits are proposed to be used against him." Id., at 267.

Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961), recognizes another ground for exclusion, holding that a co-defendant (as here), against whom illegally seized evidence is sought to be used, may raise the objection regardless of his status as guest or occupant of the invaded premises. The court cites McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), in support of that proposition and it might well be that the first test enunciated in Jones applies to that state of facts as well.

However, it is unnecessary for us to look to other than *Jones*. We view Jones as giving an absent guest of a household the same dignity as the absent homeowner who has been a victim of an illegal search and seizure. Henzel v. United States, 296 F.2d 650, 653 (5th Cir.

1961). His possessory interest derives *where* the search is made, not *when*. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), (decided prior to the Jones case). The accused now need only establish that he was legitimately on the premises when he placed the fruits of the search there and where the search later occurred. His personal presence at the time of the search is not a necessary ingredient. Such a person has a right of privacy to be protected, and, of course, the purpose of discouraging unlawful police activity is also advanced. However, the accused who was not legitimately on the premises when he placed the items of evidence there and where the search later occurred has no standing to complain. Petitioner, occupying the premises at the time of the arrest (he was asleep on the floor), was absent therefrom only because he was removed by the arresting officers. In Burge v. United States, 342 F.2d 408 (9th Cir. 1965), under similar circumstances "standing" was conceded although the court held the search itself reasonable.

To hold otherwise would create a situation where law officers, in order to circumvent the requirement of occupancy "when" the search takes place, might be tempted to remove persons from premises, with or without cause, for the real purpose of conducting a search. This would negate the substance of the Jones ruling.[2]

2. Having concluded that petitioner had standing to object to the use of illegally obtained evidence against him, we are concerned whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or whether its admission

---

[2]California has taken a unique view of the problem of standing. The California Supreme Court in People v. Cahan, 44 Cal.2d 434, 282 P.2d 905 (1955), adopted the exclusionary rule as the only effective means of securing constitutional guarantees against illegal searches and seizures. The primary objective was to prevent the court "lending its aid" to the success of a "lawless venture." In People v. Martin, 45 Cal.2d 755, 290 P.2d 855 (1955), the court, in dicta, stated that the exclusionary rule was applicable "whenever evidence is obtained in violation of constitutional guarantees * * * *whether* or *not* it was obtained in violation of the particular defendant's constitutional rights." Id., at 857.

merely amounted to harmless error. Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 231, 11 L.Ed.2d 271 (1963) ; Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965).

Illegally obtained evidence may be only a relatively insignificant part of the total evidence and have no effect on the outcome of the trial. People v. Parham, 33 Cal.Rptr. 497, 384 P.2d 1001 (1963).

The bartender who was the victim of the holdup here was approached by defendant and Hansen during the evening hours and while business was quite active. The bartender testified that defendant addressed him by his first name. Defendant asked the bartender to join him at the end of the bar for a conversation. Upon doing so, the bartender stated that defendant pointed a pistol at him that "looked like" the one in evidence, told the bartender that this was a holdup, that he should accompany defendant to the rear room in which a safe was located, that they did so, that they had conversation in the room, confronted each other, and returned to the bar but no fruits of the holdup were there obtained. Hansen, in the meantime, was casually tending bar so that the customers would not think anything amiss. During this somewhat lengthy course of conduct, at no time did the defendant hide his face in any manner from the bartender. The jacket was a short type and did not obstruct the facial features of the defendant. As the saying goes, the bartender made positive "eyeball to eyeball" identification of the defendant as the person who held him up. The jacket in no way contributed to the identification of the defendant and the gun likewise could have been any gun, not necessarily the one which was introduced into evidence. The gun did not contribute to the identification of the defendant and the fact that the holdup occurred is uncontroverted in the record.

Certainly, the admission of the jacket and gun into evidence did not create a reasonable possibility that the

said evidence might have contributed to defendant's conviction.

Further, after defendant had been arrested and as he was standing in the hallway near the booking office of the jail, one of the arresting police officers testified that defendant stated, "he would not make a statement due to the fact he didn't know why he had done it because he knew he would get caught."

Clearly, then, this is an admission also uncontroverted in the record, easily classified as a spontaneous admission. Greenwell v. United States, 336 F.2d 962 (1964), at page 966.

In light of the admission and the rule of harmless error, which in this instance is applicable, the petition is denied. Counsel for the indigent petitioner, having been appointed by this court, is awarded the sum of $300 as attorney's fees to be paid from the reserve statutory contingency fund. Stats. Nev. 1964 (Special Session), ch. 7.

THOMPSON and BADT, JJ., concur.