ROGER WAYNE NOOTENBOOM, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5097

September 26, 1966                    418 P.2d 490

330

*Irwin Aarons* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, Carson City; *Edward G. Marshall,* Clark County District Attorney, and *James H. Bilbray,* Deputy District Attorney, of Las Vegas, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

Two informations were filed against Nootenboom in the district court charging him with the commission of four different offenses, each relating to the same transaction or event. The first information alleged first and second degree kidnaping in separate counts; the second, rape and robbery. Counsel stipulated that the two cases be consolidated for trial. The court allowed each side four peremptory challenges. During trial, evidence was received over the objection that it was secured by an unreasonable search and seizure. At the close of the evidence and before jury argument, the state dismissed the first degree kidnaping and robbery charges. Only the second degree kidnaping and rape charges were submitted to the jury. The jury convicted Nootenboom of each crime. He was sentenced to prison for a term of not less than 10 years nor more than 15 years for second degree kidnaping, and to a term of not less than 5 years nor more than 10 years for rape. The sentences are concurrent. This appeal followed.

Three errors are claimed. First, that the trial court should have allowed each side eight peremptory challenges since the crime of first degree kidnaping is punished by death or imprisonment for life, and the crimes of second degree kidnaping and rape carry sentences which may be extended to life. Second, that conflicting jury instructions were given about the credit to be accorded the testimony of the complaining witness. Third, that the arrest of Nootenboom without a warrant was unlawful, thereby precluding the reception of evidence taken from his person. We turn to consider these claims.

1. The legislature has provided that each side shall have eight peremptory challenges "If the offense charged is punishable with death or by imprisonment for life"; otherwise, each side shall have four peremptory challenges. NRS 175.085.[1] Clearly the trial court should have allowed each side eight peremptory challenges since, among other offenses, the defendant was accused of first degree kidnaping which is punished by death or life imprisonment. However, that charge was dismissed before the consolidated cases were submitted to the jury and cannot, therefore, be the predicate for reversible error. The question remains whether second degree kidnaping (NRS 200.330) and rape without extreme violence and great bodily injury (NRS 200.360 (1)), each carrying a fixed minimum which "may be extended to life," come within the legislative mandate for eight peremptory challenges. This question was considered in State v. Squier, 56 Nev. 386, 54 P.2d 227 (1936), but not resolved.

We conclude that NRS 175.085 providing for eight peremptory challenges when "the offense charged is punishable by imprisonment for life," does not apply to

---

[1]NRS 175.085 reads: "1. If the offense charged is punishable with death or by imprisonment for life, the defendant is entitled to eight, and the state to eight, peremptory challenges. 2. If the offense charged is other than those mentioned in subsection 1, the defendant is entitled to four, and the state to four, peremptory challenges."

crimes carrying a fixed minimum prison term which may be extended to life. That part of NRS 175.085 applies only when no shorter sentence than life may be imposed. See People v. Shaw, 237 Cal.App.2d 606, 47 Cal.Rptr. 96 (1965), where the California cases since 1884 are cited. There is authority contrary to the California view. However, since our statute was borrowed from California, along with the judicial interpretation given by the California courts, we are persuaded to follow.

Since the first degree kidnaping charge was dismissed and none of the other offenses call for eight peremptory challenges, there can be no substance to the first claim of error.

2. Two jury instructions concerning the credit to be accorded the testimony of the victim are challenged as conflicting.[2] We do not see any conflict. When read together they simply advise the jurors that they may be persuaded solely on the basis of the testimony of the complaining witness, but to exercise caution because of the grave dangers attending. Similar instructions were reviewed and approved in People v. Scott, 24 Cal.App. 440, 141 P. 945 (1914). This claim of error is without merit.

3. The last issue is whether there was probable cause for the arrest of the defendant leading to the search of

---

[2]The instructions read: "Instruction No. 11: The Court instructs the Jury that it is your province to determine the weight and credibility to be given the testimony of a female upon whom it is alleged in an Information that a rape has been committed, and who testifies to the facts and circumstances of such rape, as of any other witness testifying in the case. And if such testimony creates in the minds of the Jury a satisfactory conviction and belief, beyond a reasonable doubt, of the Defendant's guilty [sic], it is sufficient of itself without other corroborating circumstances or evidence to justify a verdict of guilty of rape, upon the trial of the case.

"Instruction No. 13A: A charge of rape, such as that made against the defendant in this case, is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the complaining witness with caution."

his person, which produced items of evidence important to the conviction. The constitutional prohibition of the Fourth Amendment is enforcible against the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). It commands that no warrants for either searches or arrests shall issue except upon "probable cause * * *."[3] Our statute, NRS 171.235,[4] suits the constitutional standard, for it restricts the authority of an officer, to make a felony arrest without a warrant, to offenses committed in his presence or to instances where he has reasonable cause to believe that the person arrested has committed a felony. Thus, the constitutional validity of an arrest for a felony not committed in the officer's presence depends upon whether, at the moment the arrest is made, he had probable cause to make it. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been committed by the person arrested. Henry v. United States, supra. A review of the relevant evidence is required.

On the afternoon of April 25, 1965, the victim, while in her parked car, was accosted by a man. With the aid

---

[3]The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4]NRS 171.235 states: "1. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: (a) For a public offense committed or attempted in his presence. (b) When a person arrestd has committed a felony, although not in his presence. (c) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. (d) On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

"2. He may also, at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest, though it afterward appear that a felony has not been committed."

of a long knife he forced her to drive into the countryside near Las Vegas. Thereafter, he bound her hands with her stockings, gagged her with her kerchief, blindfolded her with the jacket of her suit and raped her in the rear seat of the car. When finished, the assailant drove her back to Las Vegas, removed about $15 from her purse, and fled.

The assailant was unknown to her. She described him to the investigating officers, Huggins and McHale, as about thirty, with a light tan, crew-cut dish-water blond hair, about six feet tall, slimly built, but with muscular arms and large hands, wearing a light grey sport shirt and dark grey trousers, and smelling strongly of body odor. She added that the assailant had an odd nose.

Since the victim had indicated that the assailant was anxious to leave town, and in view of the fact that he had taken only the small amount of money she had, Huggins and McHale checked the bus depot several times for probable suspects. They questioned a number of men and, finally, about 9:00 p.m. spotted the defendant, standing with a person who later proved to be his father, removing articles from a rented locker. The defendant seemed to fit the description: similar clothes, light tan, crew-cut, indications of heavy perspiration. However, he was of rather heavy build and, while his nose seemed ordinary, his ears were prominent.

The defendant was asked to step outside where he produced, on request, identification—a driver's license in the name of Roger Lawrence Nubo, and other identification bearing the name of Roger Wayne Nootenboom. On being questioned he indicated that he had come into town the previous night, had no money and no place to stay, and had spent the prior night gambling and walking the streets. When asked where he had been all day, he said with his father—the man inside the depot.

Officer McHale questioned the father, who said that he (the father) had been to the race track during the day from noon until about 7:00 p.m. and that his son was not with him. Nootenboom was then arrested for being a disorderly person. The officer searched him and found a switchblade knife. When booked at the jail his clothing

was taken and a package of Kent cigarettes was found in the pocket of his shirt. The officers had found two Kent cigarettes in the victim's car, though she smoked L and M's. The victim was called and immediately identified Nootenboom from a lineup of approximately six men at the police station. During the trial, the clothes, cigarettes and switchblade knife were received in evidence over objection.

Of course, the lineup identification by the victim does not validate the prior arrest, nor may the fruits of the search be used for that purpose. The United States Supreme Court has consistently rejected the notion that a search, unlawful in its inception, may be validated by what it turns up. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 250 (1927) ; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) ; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As already indicated, the issue of probable cause for the arrest depends upon the circumstances existing at the time the arrest is made.

We hold that the arresting officers, at the time of arrest, had probable cause to believe that Nootenboom was the person who had feloniously attacked the woman they had interviewed earlier that day. The physical description was close. One of the officers testified: "The description we had immediately he fitted perfectly, just like somebody shined a light on him." When questioned, identification cards bearing two different names were submitted. Nootenboom's explanation of his whereabouts during the afternoon did not square with his father's story. True, the officers were not certain that he was the man they were looking for, but certainty is not required —only probable cause.

The appellant stresses that he was arrested as a disorderly person. The record reflects that the officers so advised him. That evidence, though relevant to the issue, does not compel us to conclude that the arrest was, in

fact, for a misdemeanor. The officers were not obliged to tell Nootenboom anything. Their statement may have been prompted by caution and, perhaps, even fear, that if Nootenboom knew the true reason why he was being taken into custody, violence or flight might ensue. Indeed, such is a reasonable inference to be drawn from the testimony of Officer Huggins. He said: "The questions that he had answered previously as to his whereabouts and yet his appearance was so good, and the description was so close, that we felt that it was a very good possibility if he was arrested on a misdemeanor where he would be taken into the jail for a lineup."

Since the arrest was lawful, the officers were authorized to contemporaneously search Nootenboom for weapons, or for the fruits of, or implements used to commit, the crimes. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed.145 (1925). Their search produced the switchblade knife. They were not obliged to undress him in public to secure his clothes and other identifying objects. We conclude that the lower court correctly allowed in evidence the defendant's clothes, cigarettes and switchblade knife, as items produced by a search substantially contemporaneous with a lawful arrest. Cf. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, (1964); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965).

Counsel for appellant was court appointed. Accordingly, we direct the District Court to give him the certificate specified in NRS 7.260(3) to enable him to receive compensation as provided in NRS 7.260(4).

Affirmed.

ZENOFF, D. J., concurs.

COLLINS, J., concurring:

I concur with the holding of the majority opinion, but for a different reason on the point dealing with the arrest. Officer McHale testified appellant was arrested as

a disorderly person, a misdemeanor. The officer had no warrant, but because the offense was committed in his presence he needed none. NRS 171.235(1)(a). Appellant was found guilty of the charge, was sentenced to jail, and served the time ordered. He in no way questioned the arrest nor appealed the conviction. Time for such appeal has since expired.

That arrest being valid, any reasonable search incident thereto would be valid. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

If arrest for the misdemeanor was valid, we do not need to speculate about probable cause to support his arrest without a warrant on the felony charge. It was the arrest for the misdemeanor which brought about the search which produced the evidence to support the felony conviction. The arrest for the misdemeanor was certainly validated in all legal respects when appellant was found guilty of the very charge for which he was arrested, served his time, took no appeal, nor otherwise attacked the judgment of conviction.