# LEROY HARPER, Appellant, *v.* STATE OF NEVADA, Respondent.

## No. 5356

March 29, 1968          440 P.2d 893

*Richard H. Bryan,* Public Defender, *Leonard I. Gang,* Deputy, and *Earle W. White,* Deputy, of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City, *George E. Franklin, Jr.,* District Attorney, *James L. Buchanan II,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

Harper was convicted of first degree burglary. His appeal asserts a violation of his rights protected by the Fourth Amendment of the Constitution of the United States. The trial court received evidence obtained from the search of a stolen automobile in which Harper had been riding as a passenger. When the original search was made the patrolman did not have a search warrant or a warrant for the arrest of the appellant. However, the initial search of the stolen vehicle was with the permission of the driver who claimed ownership, and the subsequent search and seizure of the evidence was reasonable and incidental to the arrest of the appellant upon probable cause. It is our opinion that there is no violation of the Fourth Amendment's proscription against unreasonable searches and seizures. We affirm the judgment of the district court.

Shortly before midnight on October 11, 1966, patrolman Patrick Charles Stevens, of the Las Vegas Police Department, observed a 1961 bronze Chevrolet automobile pull out of a gas station. Two men were in the front seat. The patrolman and his shift partner, reserve police officer G. H. Body, started to follow in the patrol car, noting that the automobile had no license plates, but it did have a dealer's sticker on the rear window which could not be read because of its position. Both driver and passenger kept furtively looking back, and the automobile then began changing lanes, from left to right and then back to left again; at this point it signaled for a left-hand turn, but the turn was not made and the car pulled back into the right lane. At that point officer Stevens stopped the Chevrolet automobile, approached the driver's side of the car, and asked to see the driver's license. Officer Body went to the passenger's side where Leroy Harper, the appellant, was sitting. The driver, Homer Washington, looked through his wallet, could not produce a driver's license, and said he must have left it at home. In the wallet, officer Stevens noticed a Las Vegas police citation for failure to have a driver's license.

When asked whose car it was, Washington stated that it was his, and that he had purchased it three days before from Country Boy Auto Sales. However, there was no dealer's report of sale affixed to the front window (as required by law if there are no license plates on the car) and Washington said that he had apparently also left this at home. Officer Stevens informed him that he was going to issue a citation for driving without a license, returned to the patrol car to write the citation and to radio the station to check with Country Boy Auto Sales in regard to the alleged sale. During this interval Harper got out of the passenger side of the car and was sitting on the ground near the curb.

It took from ten to twenty minutes for the call to come back from police control, at which time the patrolman learned that the car had not been sold by the auto agency, and that no one had been given permission to take it from the lot. Officer Stevens then told the driver that he was under arrest for grand larceny auto, and after a brief talk with Harper, arrested him on the same charge, since his story was at variance with Washington's. A citation for a moving traffic violation was never issued, although the citation to Washington for operating a motor vehicle without a driver's license was delivered to him after he was booked at the jail.

At some point in time prior to the arrest of either Harper or Washington for grand larceny and burglary, officer Stevens had observed a typewriter case and a receipt book in the back seat of the car. Washington told the patrolman that he worked as a mechanic and carried tools in the car, at which time he gave officer Stevens permission to look in the trunk. In addition to the tools, the trunk also contained a number of dealer's stickers and a pair of coveralls.

Subsequent to the larceny arrest, a second call came from police control relaying information that one of the owners of the auto agency and a police officer had proceeded to the auto sales office, found it burglarized of a typewriter receipt book, checkbook, tools and dealer's stickers. Washington was then placed under arrest for burglary.

A third call came in shortly thereafter from detective Brown who had been sent to Country Boy Auto Sales, to photograph and process the scene of the crime. He stated that he had found a piece of gray yarn, or thread, apparently from a sweater caught in one of the doors that had been broken open, and inquired if either suspect was wearing a sweater of that color. Harper was wearing a gray sweater, and he was immediately arrested on the burglary charge. Following the felony arrests, the Chevrolet was again searched and the items found

were taken as evidence. All of the items found in the stolen automobile were received in evidence and identified by one of the agency owners as being either his or his partner's personal property. A checkbook recovered from Harper during the booking-in process was also introduced into evidence as were the piece of yarn found at the scene, and the sweater Harper was wearing at the time of his arrest. The yarn and the sweater were tied together by expert testimony. The burglary conviction of Harper resulted.

As one of his assignments of error the appellant contends that the trial court erred when it found that he was without standing to claim the protection of the Fourth Amendment and refused to suppress the evidence obtained by the patrolman when he searched the stolen vehicle.

The appellant further contends that the stopping of the Chevrolet automobile in which appellant was a passenger, was without probable cause, that all proceedings in the case thereafter were illegal and invalid, and that the trial court erred in its refusal to dismiss the case.

We find that the appellant is without standing to claim the protection of the Fourth Amendment. On two previous occasions this court has ruled on the matter of standing. Dean v. Fogliani, 81 Nev. 541, 407 P.2d 580 (1965), and Osborne v. State, 82 Nev. 342, 418 P.2d 812 (1966). *Osborne* involved the search of a stolen automobile. In that case, we held that since the accused did not own, nor have the right to possess the automobile, he was without standing to claim the protection of the Fourth Amendment. The rule announced in *Osborne* is controlling in this case.

In the case of Carroll v. United States, 267 U.S. 132 (1925), the court considered the problem of a search of an automobile without a warrant, and it said: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." However, in the case of Agnello v. United States, 269 U.S. 20 (1925), decided a few months after Carroll v. United States, supra, the court said: "One's house cannot be searched without a search warrant, except as an incident to lawful arrest."

The *Carroll* case indicates that the search of an automobile, while still subject to some restrictions, may be conducted much more freely than the search of a house, store or other fixed piece of property. This position is based on the common sense

approach that a speeding automobile would be long gone before a search warrant could be obtained. Cooper v. California, 386 U.S. 58 (1967), Preston v. United States, infra.

The Supreme Court's holding in Jones v. United States, 362 U.S. 257 (1960), regarding the question of standing to claim the protection of the Fourth Amendment was premised on two separate and distinct grounds. First, it was decided that if a person is legitimately on the premises when the search was made, the Fourth Amendment protects him, and secondly, that standing arises in those offenses in which the allegation of ownership or possession usually required for the motion to suppress the evidence would be an admission of the sole essential element necessary to establish guilt. In holding that Jones was legitimately on the premises and was an aggrieved person who had standing to raise the constitutional issue, the court said: "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress when its fruits are proposed to be used against him. *This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.*" (Emphasis added.)

The holding in *Jones* precludes Harper from having any standing to raise the constitutional protection of the Fourth Amendment and from suppressing the evidence found by the patrolman when he searched the stolen automobile. Not being legitimately in the automobile, and not asserting any ownership therein, Harper was not an aggrieved person.

Within the holding of Jones v. United States, supra, Harper was one of· that class who "by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." Nor does Harper have standing by virtue of the offense charged. The mere possession of an automobile, even though it is stolen, is not a crime, nor does possession standing alone establish guilt.

In the case of Simmons v. United States, 390 U.S. 377 (1968), the question of standing to claim the protection of the Fourth Amendment was again decided, and the court citing Jones v. United States, supra, reaffirmed the principle that one must be legitimately upon the premises to claim standing when it said: ". . . we held alternatively that the defendant need

have no possessory interest in the searched premises in order to have standing; *it is sufficient that he be legitimately on those premises when the search occurs.*" (Emphasis added.)

The appellant urges that Henry v. United States, 361 U.S. 98 (1959) is controlling in this case. In *Henry,* the defendant was illegally arrested; therefore no search could be justified as incident to arrest. Furthermore, there was no probable cause that would bring the case within Carroll v. United States, supra. The *Henry* case does not support appellant's position. Here the arrest of the appellant was upon probable cause from information received by the patrolman. Before his arrest Harper was merely a passenger standing by while the driver of the vehicle was being cited for a traffic violation. The first search of the stolen vehicle was with the consent of the driver, and the subsequent search and seizure of evidence was incident to the appellant's arrest for grand larceny and burglary.

In People v. Howard, 334 P.2d 105 (Cal.App. 1958), the court said: "It is of course, the law that evidence secured in an illegal search is not admissible. People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513. However, it is also the law that if the defendant or someone with apparent authority, consents to the entry, and the entry is made in good faith, it is not unlawful." See Williams v. State, 375 S.W.2d 375 (Ark. 1964); 79 C.J.S. Search and Seizures § 62, at 816, et seq.

At the time, the driver, Washington, gave his consent to an examination of the trunk of the automobile, he was claiming ownership of the 1961 Chevrolet, and the patrolman had every reason to believe that Washington had authority to consent to the examination.

In the case of Cooper v. California, supra, the conviction rested in part on the introduction into evidence of a small piece of brown paper sack seized by the police, without a warrant, which, upon Cooper's arrest, had been impounded and was being held in a garage. The search occurred a week after the arrest. The Supreme Court in affirming the conviction, said: "Petitioner appealed his conviction to the California District Court of Appeal which, considering itself bound by our holding and opinion in Preston v. United States, 376 U.S. 364, held that the search and seizure violated the Fourth Amendment's ban of unreasonable searches and seizures. That court went on, however, to determine that this was harmless error . . . [W]e are satisfied that the lower court erroneously decided that our Preston case required that this search be held an unreasonable one within the meaning of the Fourth Amendment.

"We made it clear in Preston that whether a search and seizure is unreasonable within the meaning of the Fourth

Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property." See Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966).

In support of the proposition that a thief has standing to invoke the protection of the Fourth Amendment, Cotton v. United States, 371 F.2d 385 (9 Cir. 1967), and Simpson v. United States, 346 F.2d 291 (10 Cir. 1965), have been brought to our attention.

We do not agree with the court's positions in these two cases regarding standing to invoke the protection of the Fourth Amendment, and find them inapplicable to this case.

Even if we are willing to ignore Jones v. United States, supra, and Osborne v. State, supra, and to abandon a common sense approach to the principles of substantial justice in order to follow the majority opinions in *Cotton* and *Simpson,* we are precluded from so doing because their rationale does not fit the facts of this case. Here, only the driver, Washington, asserted a proprietory interest in the automobile. Harper asserted no proprietory or possessory interest whatsoever. In both *Cotton* and *Simpson* the majority found that the thief had standing only because he met the prerequisite of asserting a proprietory or possessory interest in the stolen vehicle.

We next turn to the appellant's attack on his arrest. We find that in each instance the arrests were reasonable and made upon probable cause, and are valid. Had the arresting officers done less they would have been derelict in their duty. It is recognized that an officer need not and, in fact, should not ignore evidence of a crime which comes to his attention. State v. Elkins, 422 P.2d 250 (Ore. 1966).

The arresting officers attention was first attracted to the automobile when they noticed that it was without a regular license plate,[1] and that the dealer's sticker in the rear window was unreadable. Immediately thereafter careless driving ensued.[2] Lanes were changed without a signal being given[3] and signals were given that were not followed. All or any of these violations of the traffic laws would have prompted and authorized the patrolman to stop the vehicle.

[1]NRS 482.275.
[2]NRS 484.060.
[3]NRS 484.154.

In the case of People v. Mickelson, 380 P.2d 658 (Cal. 1963), the court said: "* * * circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning * * *. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search."

When the automobile was first stopped, there was nothing to arouse any suspicion towards the occupants concerning the commission of any other misdemeanors or felonies. Later, the plot began to thicken. First, Washington was without a proper driver's license,[4] second, he claimed ownership of the automobile but had no registration or dealer's report of sale.[5] At this point there was probable cause for an arrest and citation of the driver for careless driving, changing lanes without proper signals, failure to have a valid driver's license and failure to display a dealer's report of sale. The patrolman chose to write the citation for failure to have a valid driver's license, and in the proper performance of his duty he proceeded to further investigate the failure to display a dealer's report of sale.

Up to this time, the appellant was enjoying the status of a passenger. Reason dictates that a passenger in a motor vehicle is not, as a matter of law, under arrest or legal restraint while a driver is being questioned or cited for a traffic violation.

While writing the citation, the patrolman received by radio, reliable information upon which he had probable cause to arrest the driver, Washington, and the appellant, Harper, for grand larceny and burglary. The subsequent search and seizure of the "fruits" of the felonies found in the automobile and on the person of the appellant were incident to those lawful arrests.

In Schnepp v. State, 82 Nev. 257, 415 P.2d 619 (1966), this court said: "Reasonable cause for arrest has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person is guilty."

We find that the traffic violations occurring in the presence of the officers were of sufficient magnitude to establish probable cause for their stopping the 1961 Chevrolet automobile and questioning the driver, and that reasonable investigation

[4] NRS 483.230.
[5] NRS 482.403.

immediately thereafter lead to the probable cause for the arrest of the appellant without a warrant.

We further find that the searches and seizures made by the officers were reasonable and lawful within the constitutional limits, and that the appellant had no standing to claim the protections afforded by the Fourth Amendment.

The judgment of the district court is affirmed.

COLLINS, ZENOFF, and MOWBRAY, JJ., concur.

THOMPSON, C. J., concurring:

Harper stands convicted of first degree burglary. His appeal asserts a violation of Fourth Amendment rights since the trial court received evidence obtained from a warrantless search of a stolen automobile in which he had been riding as a passenger. I agree with my Brothers that the proscriptions of the Fourth Amendment were not offended, but am puzzled why they deem it necessary to discuss this issue in view of their conclusion that Harper lacks standing to raise it. Accordingly, I prefer to state my views separately.

1. The law is not clear as to whether a thief in possession of a stolen car has standing to object to a search thereof. The circumstances of each case must be examined. In the case at hand the search preceded receipt of radioed information that the car was stolen, and occurred at a time when the police did not have lawful custody. Cf. Cooper v. California, 386 U.S. 58 (1967); Harris v. United States, 390 U.S. 234 (1968). In these circumstances the Court of Appeals for the Ninth Circuit has ruled that the thief has standing to invoke Fourth Amendment protections. Cotton v. United States, 371 F.2d 385 (9 Cir. 1967). That court wrote: "It has been repeatedly held, in substance, that an automobile has the status of a house, so far as the protection of the Fourth Amendment is concerned, subject to certain limitations arising from its mobility. (Citations.) And the rule that one whose possession is wrongful is entitled to protection against all who do not have a paramount right to possession is equally applicable to chattels, such as a car. * * * The question here is as to the standing of a thief who had possession of it and claimed it as his own to object to a search of the car. We hold that he has such standing." Id. at 391.

Since the validity of a state conviction is subject to federal review and control when challenged upon federal constitutional grounds [Judiciary Act of 1789, ch. 20, § 25, 1 Stat. 85; Judiciary Act of 1867, ch. 28, § 1, 14 Stat. 385; Brown v. Allen,

344 U.S. 443 (1953); Walker v. Fogliani, 83 Nev. 154, 425 P.2d 794, 796, 797 (1967)], it is best, I think, that we defer to the federal court of appeals for our circuit when it has clearly expressed its opinion on the issue, and that expression is consonant with hints flowing from the United States Supreme Court. I cannot agree with my Brothers that the Cotton case is out of step with the Supreme Court opinion of Jones v. United States, 362 U.S. 257 (1960). The matter of standing in Jones was decided with reference to Rule 41(e) of the Federal Rules of Criminal Procedure, and concerned the search of an apartment which the accused had occupied with the permission of the tenant. The Court suggested, inter alia, that one enjoys standing under Rule 41(e) when the victim of the search is the person against whom the search is directed. Furthermore, the Court stated its view that if the prosecution turned on illicit possession the accused automatically enjoys standing. Id. at 263. Here, the search of the car and trunk was directed to the occupants of the car, and it cannot be denied that the subsequent prosecution of Harper for burglary may well have turned upon proof of possession of the items stolen. Thus, two hints supporting standing are satisfied.

On March 18, 1968, in the case of Simmons v. United States, the High Court ruled that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt, since to allow such to happen would violate his Fifth Amendment privilege against self-incrimination. Simmons involved robbery, a non-possessory offense, and the Court's holding, by necessary implication, extended the rationale of Jones to non-possessory crimes in which conviction might in large part depend upon introduction in evidence of the property seized. Standing to object to the search was assumed in such circumstance.

In any event, the search took place at a time when the police did not have lawful custody of the car [cf. Cooper v. California, supra; Harris v. United States, supra] and while investigating only traffic irregularities. The overwhelming weight of case law holds that a car may not be searched for an ordinary traffic offense. People v. Blodgett, 293 P.2d 57 (Cal. 1956); People v. Mayo, 166 N.E.2d 440 (Ill. 1960); People v. Zeigler, 100 N.W.2d 456 (Mich. 1960); Barnes v. State, 130 N.W.2d 264 (Wis. 1964). The occupants of the car, although stolen (which fact the officers did not then know), had a paramount right to possession and were entitled to object to the search.

My Brothers appear to rely heavily upon the driver's consent

to the search. The case before us is not the driver's case. The passenger (Harper) did not consent to anything. His constitutional rights are his alone and may not be obliterated by the conduct or words of a companion. In my view, the only significant issue in this case is whether the search may fairly be deemed incident to the felony arrests which soon followed. I turn to consider that subject.

2. The prohibitions of the Fourth Amendment are enforcible against the States through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961). Warrants for either searches or arrests shall not issue except upon probable cause. NRS 171.235 suits the constitutional standard since it restricts the authority of an officer to make a felony arrest without a warrant to offenses committed in his presence, or to instances where he has reasonable cause to believe that the person arrested has committed a felony. The validity of an arrest for a felony not committed in the officer's presence depends upon whether, at the moment the arrest is made, he had probable cause to make it. Such cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been committed by the person arrested. Beck v. Ohio, 379 U.S. 89 (1964); Henry v. United States, 361 U.S. 98 (1959); Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966).

We have related the circumstances leading up to the arrests of appellant. Without question, the officers had probable cause to arrest for a felony after receiving the first radioed information from police control. The thrust of appellant's contention, however, is that the arrest occurred the moment the car was stopped and the occupants detained, at which instant the police officers did not have reasonable cause to believe that the occupants had committed a felony, or were then committing one, because the irregular driving, absence of license plates, and the occupants' glances to the rear did not supply probable cause for a felony arrest. This contention is wide of the mark, since it fails to recognize the distinction between probable cause to stop and detain for investigation and probable cause for arrest. Although it is true that the Supreme Court in Henry v. United States, supra, held that an arrest occurs when an automobile is stopped during the course of a criminal investigation—and if the officer does not have reasonable cause to arrest the occupant at that time, the arrest is unlawful—the Court took care to limit its holding to the "purposes of this case." 361 U.S. at 103. The Court did not pretend to establish the moment of arrest for all car stopping cases in all circumstances, nor may

that opinion sensibly be read to outlaw, in appropriate circumstances, the right of the police to stop a car and make inquiry incident to a legitimate investigation.

The distinction between probable cause to stop and detain for legitimate investigation, and probable cause for arrest, is clearly expressed in People v. Mickelson, 380 P.2d 658 (Cal. 1963). In noting that the Henry conclusion was neither constitutionally compelled by the Fourth Amendment nor preventative of reasonable state rules consistent with the Fourth Amendment, the California court stated: "* * * circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. * * * Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." Id. at 660.

The Court of Appeals for the Ninth Circuit has recognized that the Fourth Amendment does not forbid brief detention for limited inquiry. Lipton v. United States, 348 F.2d 591 (9 Cir. 1965); Gilbert v. United States, 366 F.2d 923 (9 Cir. 1966); Wilson v. Porter, 361 F.2d 412 (9 Cir. 1966); Cotton v. United States, 371 F.2d 385 (9 Cir. 1967). In Wilson, supra, the court wrote: "Granting that the constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause, there is a difference between that 'cause' which will justify informal detention short of arrest and the probable cause standard required to justify that kind of custody traditionally denominated an arrest. * * * We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. * * * [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." 361 F.2d at 415.

Here, the erratic driving, absence of plates, and furtive glances to the rear gave the officers ample cause to stop the car and inquire further. Cf. People v. Reulman, 396 P.2d 706 (Cal. 1964). Their inquiry—did the driver have a license and a dealer's report of sale—produced neither and prompted the officers to run a check on the ownership of the car. The radioed

information from police control furnished ample cause for the larceny arrests which were then made. Schnepp v. State, 82 Nev. 257, 415 P.2d 619 (1966); Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967); Foy v. State, 84 Nev. 76, 436 P.2d 811 (1968).

A search and seizure without a warrant and unrelated to the arrest both as to time and place is unlawful since it is not incident to the arrest. Preston v. United States, 376 U.S. 364 (1964); Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965); Whitley v. State, 79 Nev. 406, 386 P.2d 93 (1963). On the other hand, if the search is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest, it is deemed to be incident to the arrest and constitutionally permissible. Stoner v. California, 376 U.S. 483 (1964); Agnello v. United States, 269 U.S. 20 (1925).

Here, the search of the car and trunk were substantially contemporaneous with the arrest made, confined to the immediate vicinity of the arrest, and within constitutional limits.[1] The items then seized were admissible at trial.

The appellant's status as a passenger does not insulate him from the consequences flowing from the initial stopping of the car. Although probable cause to stop and detain for the traffic violation ran only to the driver, the passenger is also subject to arrest if an independent ground exists therefor. United States v. Di Re, 332 U.S. 581, 591 (1948). That ground was established upon receipt of the radioed information.

At the time of booking the police took the appellant's sweater and a checkbook found on his person. These items were properly received in evidence upon the authority of Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966), and Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966). In Nootenboom we observed that arresting officers are not obliged to undress the subject in public in order to secure his clothes and other identifying objects. In Arabia, we noted that during the period of police custody, an arrested person's personal effects, like his person, are subject to reasonable inspection, examination, and test. The purposes of the Fourth Amendment are not offended by the sequestration of property at the time of booking. It is my opinion that Fourth Amendment protections were not violated.

---

[1] In Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961), we stated: "* * * but a search incident to an arrest made before or after the arrest is reasonable." Id. at 502.