JOSEPH REX MERICA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 6353

September 24, 1971                    488 P.2d 1161

*Jerry C. Lane,* of Carson City, for Appellant.

*Robert List,* Attorney General; *Michael E. Fondi,* District Attorney, of Carson City, for Respondent.

# OPINION

By the Court, GUNDERSON, J.:

Convicted of violating NRS 453.030 by possessing marijuana, appellant contends his Fourth Amendment rights were violated:

(1) When a police officer entered a bamboo-screened alcove housing heating and air conditioning equipment, on the second floor of an apartment building where the co-defendant's mother lived, and there discovered a plastic "baggie" containing marijuana; and

(2) When the watching police officer found the "baggie" missing after defendants paused at the alcove and moved its screen, then forthwith pursued their vehicle, arrested them, caused appellant's search, discovered a marijuana cigarette on appellant's person, and recovered an apparently identical "baggie" of marijuana nearby where another officer had seen it thrown from defendants' vehicle.

1. Appellant's first point apparently is based on the contention that the officer unlawfully entered an area not open to the public. We need not resolve appellant's dubious status to raise this issue.[1] Assuming appellant had status as a guest of his co-defendant's mother, his rights to privacy could be no greater than if her apartment were his own dwelling, cf. United States v. Capps, 435 F.2d 637 (9th Cir. 1970); and, vested with her status, appellant would have no valid constitutional complaint. The record does not reflect that the building's tenants had any more right to enter the alcove than did the

---

[1]The record does not establish that appellant had any legitimate reason for coming to the building, at any prior time he may have been there, or that he ever had any right to enter the alcove. Regarding status of a trespasser to complain of an unlawful search, and the burden of proving status, consider: Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960); Dean v. Fogliani, 81 Nev. 541, 407 P.2d 580 (1965); Osborne v. State, 82 Nev. 342, 418 P.2d 812 (1966); Harper v. State, 84 Nev. 233, 440 P.2d 893 (1968); Gebert v. State, 85 Nev. 331, 454 P.2d 897 (1969); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Gregg, 403 F.2d 222 (6th Cir. 1968); Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969); Meade v. Cox, 310 F.Supp. 233 (W.D. Vir. 1970).

public at large; however, assuming this, the following language from a recent decision by Massachusetts' highest court is pertinent:

"The area where [the narcotics] were found . . . was not in [defendant's] control. It was a common area, available to each tenant of the building, in common with the others, for washing clothes and perhaps for limited other purposes. [Defendant] did not have any exclusive control of any part of it. It is obvious that the cellar remained subject to the owner's control. . . . The cellar was not a part of [defendant's] apartment or home. There he had no right to privacy, although (with other tenants) he could use it appropriately. The landlord's invitation to [defendant], however, to use the cellar, and his easement or license to do so plainly did not extend to the use of the cellar for storing contraband narcotics. . . .

"We assume, as the trial judge found, that the three police officers committed a trespass in entering the cellar . . . This entry, however, was a trespass against the building owner (who is not here objecting), not against [defendant]. It did not invade an area within the 'curtilage' of [defendant's] apartment. See United States v. Miguel, 340 F.2d 812, 814 (2nd Cir.), cert. den. 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97. In a modern urban multifamily apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control. . . . In such an apartment house, a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control." Commonwealth v. Thomas, 267 N.E.2d 489, 490–491 (Mass. 1971). In accord: People v. Terry, 454 P.2d 36 (Cal. 1969); Marullo v. United States, 328 F.2d 361 (5th Cir. 1964); Polk v. United States, 314 F.2d 837 (9th Cir. 1963).

As we recently pointed out in Casey v. State, 87 Nev. 413, 488 P.2d 546 (1971), the United States Supreme Court's holding in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), may require us to accord some search issues different analysis than in the past. The doctrine of *Katz* is that "the Fourth Amendment protects people, not places," and that therefore an "effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented." 389 U.S., at 351. The true inquiry, *Katz* teaches, is whether the person claiming protection under the Constitution was "entitled to

assume" privacy at the place and under the circumstances concerned. 389 U.S., at 352. Accordingly, terms such as "curtilage" may in the future have little place in the proper vocabulary of search and seizure law; yet, nonetheless we believe many cases decided before *Katz,* whatever their language, constitute correct holdings that in the particular place and circumstances concerned, the persons concerned had no constitutionally protected right to expect privacy. Cf. Casey v. State, cited above. As the necessity arises, the courts will be called upon to re-think old problem situations, in the light of *Katz,* to determine if they now require different treatment.[2]

In our view, now as in the past, neither a tenant nor his guests are "entitled to assume" privacy in an equipment alcove like the one here concerned.

2. Appellant contends that because he was arrested and searched without a warrant, the court erred in not assigning the State the burden of proving probable cause for arrest. As his counsel contends, Schnepp v. State, 82 Nev. 257, 415 P.2d 619 (1966), holds the prosecution has the burden to show probable cause for an arrest without a warrant. *Schnepp* also holds that, however the record is developed, error in assigning the burden is harmless if probable cause is established.

The constitutionality of a warrantless arrest depends on whether, at the moment it occurs, "facts and circumstances known to the officer warrant a prudent man in believing that a felony has been committed by the person arrested." Nootenboom v. State, 82 Nev. 329, 334, 418 P.2d 490, 492 (1966); Schnepp v. State, cited above. As the record showed, when appellant was arrested and searched, the investigating officer (who from experience judged the baggie's contents to be marijuana) had substantial knowledge a felony had been committed. From the fact the marijuana was gone after defendants' stop at the alcove, the officer had solid ground to think one of them had assumed physical possession of the contraband. Except for such inference as might be drawn from the fact that the co-defendant's mother lived in the building, it was as likely that appellant had taken physical possession as that the

---

[2]Compare: United States v. Buchner, 164 F.Supp. 836 (D.D.C. 1958), affirmed, Buchner v. United States, 268 F.2d 891 (D.C.Cir. 1958), with Cohen v. Superior Court, 85 Cal.Rptr. 354 (Cal.App. 1970), concerning use of common areas to invade the reasonably expected privacy of a tenant within his apartment.

co-defendant had. Moreover, circumstances strongly suggested that whichever defendant had retrieved the contraband marijuana (revealed in the characteristic plastic "baggie") that man felt free to commit a felony in the presence of the other. Either was likely to have the marijuana; both were likely to be involved. True, the officer could not actually see the contraband removed; true, he took time to determine it was missing from the alcove, and was unable to apprehend the defendants for some fifteen minutes after their departure. Despite this short time lapse, we think the facts known to the officer at the time of the arrest and incident search showed probable cause, and that the seizure of the marijuana cigarette on appellant's person was lawful.

There could be no valid constitutional objection to admission of the "baggie" and its contents, for these were recovered from the sidewalk at a place in plain view. Manning v. State, 87 Nev. 299, 486 P.2d 485 (1971); Oliver v. State, 85 Nev. 10, 449 P.2d 252 (1969); Stamps v. State, 83 Nev. 230, 428 P.2d 187 (1967).

Although appellant only objected to admission of the contraband on the constitutional grounds we deem insubstantial, for the first time on appeal he suggests that the "baggie" and contents should not have been admitted against him, evidence being insufficient to justify the jury finding that he had possessed it. This objection not having been specified in the lower court, we will not consider it on appeal. Kelly v. State, 76 Nev. 65, 348 P.2d 966 (1960); cf. Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961). As the marijuana cigarette found on appellant's person was indubitably connected with him, and warranted his conviction for the crime charged, there is no need to decide whether his conviction could have been sustained with only the baggie's contents in evidence.

Other assignments of error do not require discussion.

Affirmed.

ZENOFF, C. J., BATJER and MOWBRAY, JJ., and COMPTON, D. J., concur.